**STUART, Collector of Internal Revenue, v. CHINESE CHAMBER OF COMMERCE OF PHŒNIX et al.**

No. 11771.

Circuit Court of Appeals, Ninth Circuit.

June 15, 1948.

710

Theron Lamar Caudle, Asst. Atty. Gen., Sewall Key, George A. Stinson, Fred J. Neuland, and Maurice P. Wolk, Sp. Assts. to Atty. Gen., and Frank E. Flynn, U.S. Atty., and Charles B. McAlister, Asst. U.S. Atty., both of Phoenix, Ariz., for appellant.

Jerman & Flynn, of Phoenix, Ariz., for appellee.

Before GARRECHT, DENMAN, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

Appellees agree that the statement contained in appellant's opening brief in general sets forth the facts of this case in a clear and concise manner. Those facts may be summarized as follows:

On or about the 11th day of October, 1945, one Ung Too Thet, alias Ung Kok Si, hereafter known as "Thet" was arrested by agents of the United States Narcotics Bureau. A search of his premises by these agents resulted in the discovery of a safe containing some $32,000 in cash and checks which were "taken" as evidence by the narcotic agents and "seized" by the Collector of Internal Revenue.

Delinquent assessments had been made against Thet for unpaid 1943 and 1944 income taxes amounting to $25,893.11. A narcotic tax of $8,100 had likewise been made against him by the Collector and satisfied out of the moneys seized. The balance of cash, amounting to $20,915.02 was applied by the Collector against Thet's unpaid income taxes.

Thereafter, during the month of November, 1945, the appellees laid claim to the moneys on the ground that Thet had no interest therein other than the safe-keeping thereof; that he was not the owner and was holding the moneys for and on behalf of each respective appellee as treasurer thereof.

The District Court found these facts to be true and further, that the fund was in the possession of the Collector and that the Collector had refused to deliver the same to the appellees.

On March 21, 1947, the District Court entered judgment against the Collector in the aggregate sum of $17,453.81. On March 31, 1947, the Collector filed a motion for new trial which was heard on May 23; the motion was granted dismissing the fourth cause of action (not here relevant) and denying it as to the remaining causes. Three days later the Collector filed a motion to dismiss the complaint for lack of jurisdiction. The motion was denied and final judgment was entered in favor of appellees and against the Collector for the aggregate sum of $15,953.81 [$15,-539.81?]

Under a certificate of probable cause issued by the District Court the appellant was released from payment of the judgment and the judgment was ordered paid out of the proper appropriation from the United States Treasury.

The appellant concedes that "presumably" the appellees invoked the jurisdiction of the District Court under the provisions of Section 24, Fifth, of the Judicial Code, Title 28 U.S.C.A. § 41, subd. (5),[1] but challenges such jurisdiction on two grounds

---

1 District Courts; Jurisdiction. § 41. Judicial Code, section 24. Original jurisdiction.

§ 41, subd. (5) Cases under internal revenue, customs and tonnage laws.

Fifth. Of all cases arising under any law providing for internal revenue, or * * *

included in the specification of errors filed on his behalf:

"1. The District Court erred in denying the Collector's motion to dismiss for lack of jurisdiction for the reason that it was without jurisdiction of the subject matter of the complaint filed herein since appellees had not filed claims for refund as required by Section 3772 of the Internal Revenue Code [26 U.S.C.A.Int.Rev.Code, § 3772].

"2. The District Court erred in denying the Collector's motion to dismiss for lack of jurisdiction for the reason that it was without jurisdiction over the Collector or over the fund which was ordered to be paid by him to appellees, since the fund, representing a portion of the amount seized from the taxpayer, was not in the possession of or under the control of the Collector, the fund having been covered and deposited into the Treasury of the United States prior to the institution of this proceeding pursuant to the provisions of Section 3971 of the Internal Revenue Code [26 U.S.C.A.Int.Rev.Code, § 3971]."

There is no contention made by appellant that the moneys here involved were legally collected or assessed against the appellees. There is a tacit confirmation of the findings of the District Court that the moneys belong to the appellees, were "seized" by the appellant, and were unlawfully withheld from the appellees.

It is the appellant's position that if the funds had been in his possession and he had not deposited them in the Treasury of the United States, it might have been possible for the court below to have directed their return. But that, since the money had been turned over to the Treasury, its recovery could be accomplished only by the filing of a claim under section 3772 of the Internal Revenue Code or in a suit against the United States under the Tucker Act, c. 359, 24 Stat. 505, 28 U.S.C.A. § 41 (20), based upon an implied contract.

First of all, in the complaint filed in this action the plaintiffs [appellees] alleged on information and belief that the fund in question, and the whole thereof, "is in the possession of the defendant above named. That the plaintiff * * * has demanded return of said fund from the above named defendant, and he has refused to deliver

the same, or any part thereof * * *." Defendant's answer admits the court has jurisdiction over the subject matter and the parties, but denies that he had in his possession any sum belonging to the plaintiffs, and, "on the contrary alleges that all of said monies were seized by the Narcotics agents, were the property of Ung Too Thet at the time of said seizure, being in his possession and subject to his personal control and use, and that the parties plaintiffs herein have no legal interest whatsoever in said fund."

In its Findings of Fact and Conclusions of Law the Court specifically found that Thet had no interest in the fund and was holding the same for the plaintiffs and: "That the said fund, and the whole thereof, is in the possession of the defendant, and the said defendant has refused to deliver said fund, or any part thereof, to the plaintiff * * *."

■ Possession and right to possession of the fund therefore were clearly put in issue. No evidence was offered during the trial by appellant to substantiate his later claim that the moneys were not in his possession but had been turned over to the Treasury. This information was peculiarly within his knowledge and was available to him at all times and he could easily have raised the point during the course of the trial. On this state of the record we therefore are not disposed to reject or upset the findings of the court and, for the purpose of this case, sustain the finding that the Collector was in possession of the fund here involved.

■ While the legality of the "seizure" in question was not challenged by the appellees in the lower court, a consideration of the record would lead us to believe that the Collector and his agents have gone to unnecessary lengths to retain the moneys which admittedly do not belong to the taxpayer, Thet, and have been adjudicated to be the property of the appellees. That the government does not sanction zeal of this kind on its behalf by its agents was long ago expressed by the Supreme Court in Bull v. United States, 295 U.S. 247, 261, 55 S.Ct. 695, 700, 79 L.Ed. 1421, through Mr. Justice Roberts:

" * * * The United States, we have held, cannot, as against the claim of an innocent party, hold his money which has gone into its treasury by means of the fraud of its agent. [case cited] While here the money was taken through mistake without any element of fraud, the unjust retention is immoral and amounts in law to a fraud on the taxpayer's rights. What was said in the State Bank Case applies with equal force to this situation. 'An action will lie whenever the defendant has received money which is the property of the plaintiff, and which the defendant is obliged by natural justice and equity to refund. The form of the indebtedness or the mode in which it was incurred is immaterial. * * *' "

■ Secondly, the cases cited by the appellant do not support the contentions made by him. They involve the *payment* of a *tax,* as such, by a *taxpayer* usually under protest and the endeavors of the taxpayer thereafter to reclaim the amounts asserted to have been wrongfully *assessed* or *collected.*

Under the circumstances here recited it is obvious the appellees are not taxpayers in the strict sense of the word, and therefore they do not come within the orbit of the income tax laws here invoked. On this point the court in Long v. Rasmussen, D.C., 281 F. 236, 238, on enjoining the sale of property wrongfully seized to make the taxes owed by another than owner of the property, said:

"The revenue laws are a code or system in regulation of tax assessment and collection. They relate to taxpayers, and *not to nontaxpayers.* The latter are without their scope. No procedure is prescribed for nontaxpayers, and no attempt is made to annul any of their rights and remedies in due course of law. With them Congress does not assume to deal, and they are neither of the subject nor of the object of the revenue laws. * * *

"The distinction between persons and things within the scope of the revenue laws and those without them is vital. * * * To the former only does section * * * apply * * * and the well-understood exigencies of government and its revenues and their collection do not serve to extend it to the latter. It is a shield for official action, not a sword for private aggression. * * *" [Emphasis supplied][2]

■ The appellees could not have maintained a suit for refund as could a taxpayer from whom a tax had been illegally collected; their only recourse was to bring suit to recover possession of the property of which they claimed to be owners. An action of this nature necessarily brings into issue title to the property seized and in this respect it is similar to a suit to quash a warrant for distraint. The effect of the court's order is merely to resolve all claims to the property under distraint.[3]

■ From early date the Supreme Court has held that district courts having jurisdiction of property taken or detained by revenue officers under authority of any revenue law of the United States, are given power to decide claims of title and to award to the rightful owner possession of the property seized. Ex parte Fassett, 142 U.S. 479, 12 S.Ct. 295, 35 L.Ed. 1087.[4]

■ The evidence in this case conclusively substantiates the findings of the court that appellees are the rightful owners of the moneys here involved and entitled to the possession thereof.

We have been unable to discover, and have been apprised of no procedure prescribed either by the regulations or the code whereby a third party claimant, not a taxpayer, may reclaim property unlawfully seized or restrained; and since this is not an action to recover a tax alleged to have been erroneously assessed or collected, the Collector could not subject the appellants to the necessity of filing a full claim for

---

2 Tomlinson v. Smith, 7 Cir., 128 F.2d 808, 811; Bigley v. Jones, D.C., 64 F. Supp. 389, 391; New York Casualty Co. v. Zwerner, D.C., 58 F.Supp. 473, 477; Filipowicz v. Rothensies, D.C., 31 F. Supp. 716, 719. See also National Iron Bank v. Manning, D.C., 76 F.Supp. 841, 843.

3 Cf. Glenn v. American Surety Co., 6 Cir., 160 F.2d 977, 981; Rothensies v. Ullman, 3 Cir., 110 F.2d 590, 592.

4 Rothensies v. Ullman, supra; Long v. Rasmussen, supra; Tomlinson v. Smith, supra.

refund under section 3772 of the Internal Revenue Code. In that event, a demand putting the Collector on notice of the appellees' position and apprising him of the amounts and the reason for their respective claims should be sufficient.

█ It is well to keep in mind that the issues raised on this appeal, viz., (1) that the money was alleged to have been deposited in the Treasury, and (2) that the appellees did not file a proper claim, were matters brought to the attention of the district court on a motion to dismiss made three days after the motion for a new trial had been denied and that the motion to dismiss was denied before the attorneys for the appellees had an opportunity to file controverting affidavits or make any record thereon, or to prove that a demand for the return of the moneys was made. However, we are of the opinion that as far as it was necessary to make such a "demand" and put the Collector on notice of the adverse claims, the appellees did all in their power. Appended to their brief we have printed copies of the "claims" filed with the Collector by each of the appellees herein fully setting forth their right to the ownership of the funds in question and demanding return and delivery of the sum to which each claimed to be entitled. The "claims" are addressed to: District and Deputy Supervisors of the Bureau of Narcotics and to W. P. Stuart, United States Collector of Internal Revenue, at Phoenix, Arizona. Also appended is a letter signed by the District Supervisor of the Bureau of Narcotics, acknowledging receipt of the "claims", and advising the attorney for the appellees that the moneys, "taken" by a customs official for safe-keeping, were "seized" by deputy collectors of the Collector of Internal Revenue. No acknowledgment of the letter was made by the Collector but the facts of the case amply prove its receipt by him.

This takes us to the second point of error relied on by the appellant.

█ The fact that the Collector may have deposited the money in the Treasury is no bar to a judgment against him. Section 842, Title 28 U.S.C.A. provides that, in case of a recovery of any money exacted by him and paid into the Treasury, if the court certifies that there was probable cause for the act done, "no execution shall issue against such collector or other officer, but the amount so recovered shall, upon final judgment, be provided for and paid out of the proper appropriation from the Treasury."

In United States v. Kales, 314 U.S. 186, 197, 62 S.Ct. 214, 219, 86 L.Ed. 132, the Supreme Court said:

"But we think these contentions disregard the statutory scheme which has been set up for the recovery from an internal revenue collector, of taxes which he had unlawfully collected * * * Originally payment under protest to an internal revenue collector of illegally exacted taxes gave rise to a common law cause of action against the collector for restitution of the overpayment. * * * By the protest the collector was informed of the contention of the taxpayer and was thus precluded from relieving himself, by payment into the Treasury of the moneys collected, from liability to make restitution. * * * By a series of Congressional acts it was made the duty of the collector to pay the Government the moneys collected, regardless of a protest. * * * But with imposition of this duty on the collector to pay over, the Government undertook to indemnify him upon certification by the court either that there was probable cause for the act done by the collector or that he acted under directions of the Secretary of the Treasury or other proper officers of the Government. * * * In that event no execution was to issue against him, but the amount of recovery was to be paid out of the Treasury.

\*　　\*　　\*　　\*　　\*　　\*

"After the enactment of legislation requiring collectors of customs to pay over to the Government duties collected under protest, * * * doubts arose whether suit could, in such circumstances, be maintained against them, since it was thought that the statutory command had relieved the collectors from personal liability. * * * But those doubts were put at rest by later acts of Congress establishing the continued right of the taxpayer to maintain a suit against such a collector notwithstanding

payment over of his collections to the Treasury. \* \* \* A like uncertainty as to the effect of the statutes requiring internal revenue collectors to pay moneys collected to the Government was resolved by this court's decisions in Philadelphia v. Collector, 5 Wall. 720, 731, 18 L.Ed. 614; Collector v. Hubbard, 12 Wall. 1, 13, 20 L.Ed. 272. As Congress had enacted provisions for indemnification of the collector by the Government, the implication necessarily arose that the taxpayer could maintain an action against him. \* \* \*"[5]

Thus it will be seen that Congress has devised by appropriate legislation the means of protecting not only the rights of a taxpayer but also to indemnify the collector on a certificate of probable cause against a personal judgment for illegally exacted taxes. We are not directed to any law which would deny the same protection to a non-taxpayer from whom moneys have been illegally seized, nor would good conscience sanction such procedure.

We have considered the remaining points of error relied on by the appellant but find no basis for them.

The judgment of the district court is affirmed.

---

[5] See also Glenn v. American Surety Co., supra. Moore Ice Cream Co. v. Rose, 289 U.S. 373, 382, 53 S.Ct. 620, 77 L.Ed. 1265.