**BRINKER SUPPLY COMPANY, a corporation, Plaintiff,**

v.

**Edward C. DOUGHERTY, District Commissioner of Internal Revenue, and Raymond S. Kraft, Acting Director of Internal Revenue, Successors to Stanley Granger, Collector of Internal Revenue, Defendants.**

Misc. No. 1738.

United States District Court
W. D. Pennsylvania.

June 30, 1955.

As Amended Aug. 11, 1955.

Ralph E. Smith, Ambridge, Pa., for plaintiff.

John W. McIlvaine, U. S. Atty., W. Wendell Stanton, Asst. U. S. Atty., Pittsburgh, Pa., for defendants.

MARSH, District Judge.

This case is before the court on the application of Brinker Supply Company to quash certain warrants of distraint[1] issued by the Collector of Internal Revenue.

At the outset it should be noted that this court has jurisdiction to entertain this proceeding, and in the attending circumstances, we think it can be disposed of summarily. Raffaele v. Granger, 3 Cir., 1952, 196 F.2d 620; Rothensies v. Ullman, 3 Cir., 1940, 110 F.2d 590.

There is no dispute that on January 22, 1952, an agent of the Collector, acting under the authority of certain warrants of distraint issued by the Collector in September, 1951 and in January, 1952, levied on certain items of road building machinery in the possession of the delinquent taxpayer, Kline & Schmidt, Inc., a corporation of Monaca, Beaver County, Pennsylvania. Immediately following the levy, the proponent, Brinker Supply Company, notified the defendant Collector of its interest in the chattels and demanded possession. The Collector refused to relinquish possession.

After filing its motion to quash, the plaintiff submitted an affidavit made and verified by Fred C. Brinker, Secretary of Brinker Supply Company.

This affidavit alleged the following facts: On March 26, 1951, the Brinker Supply Company leased to Kline & Schmidt, Inc., four items of equipment which are the subject of the Collector's distraint. The lease created a bailment on a weekly basis. The rental was $150 per week which was to be paid by the bailment lessee Kline & Schmidt, Inc. This bailment lease contained no option to purchase the items. Upon default by the lessee, the lessor retained the right to immediately repossess the leased property. Following the seizure of the property by the Collector, the lessee refused and did fail to pay the weekly rental. At no time did the Brinker Supply Company bargain, sell or in any way transfer to Kline & Schmidt, Inc., any of the items seized by the defendant Collector.

The Collector's reply consisted of unsworn and unverified statements that the taxpayer-lessee had an equity in the property when it was seized. In addition he attached copies of three separate bailment lease contracts and a conditional sales contract, each contract purporting to cover one of the four items covered by the lease of March 26, 1951, relied upon by Brinker Supply Company.

1. 26 U.S.C. § 3690 (1952).

The first of these contracts bears the date of October 2, 1947, and purports to be a bailment lease with an option to purchase. It was signed "Brinker Supply Company, Inc." and "Lawrence A. Schmidt". The second is dated April 27, 1948. This purports to be a bailment lease with an option to purchase like the first. This is signed "Brinker Supply Company, Inc., By Fred C. Brinker" and "L. A. Schmidt". The third, dated June 13, 1949, and also purporting to be a bailment lease with an option to purchase, was signed "Brinker Supply Company, Inc., By C. H. Brinker, Pres." and "Kline & Schmidt By Charles M. Kline". The fourth and final document is dated August 3, 1949. This purports to be a conditional sales agreement. This document is signed "Brinker Supply Company By F. C. Brinker, Treas." and "Kline & Schmidt By L. A. Schmidt".[2]

■ It is apparent that none of these contracts were signed by the taxpayer Kline & Schmidt, Inc., as was the contract of March 26, 1951. The latter was clearly signed for the corporation by "L. A. Schmidt, Sec'y and Treas." This makes the four documents which the opponent of the application has produced *res inter alios acta.* There is no allegation even in the answer to the motion that the signator of any of the contracts purported to sign for the corporation. Neither is there any allegation that "Kline & Schmidt" was "Kline & Schmidt, Inc." Since the Collector has had more than sufficient time to reply, it appears to the court that said Collector is unable to raise either a material issue of fact or a valid defense.[3] Therefore, on this issue alone, an order quashing the warrants is proper.

■ But even if the Collector could succeed in convincing this court that the documents were not *res inter alios acta,* he would still be faced with establishing his claim to any of the property held by the taxpayer under the bailment lease. It is too well established for dispute that the Collector's distraint[4] is only valid against the property of the taxpayer. The property of no other can be so taken to satisfy the taxpayer's obligation.[5] Raffaele v. Granger, supra; 9 Mertens, Law of Federal Income Taxation § 49.163 (1943). It follows irresistably that the bailor's or lessor's interest cannot be so seized, but rather only the possessory interest of the bailee or lessee. The bailor's or lessor's reversion is vested in him for the duration of the lease, and the present enjoyment of the reversion revests according to the terms of the contract. In the contract concerned, such revesting occurs when the bailment lessee defaults in his payments. It is undisputed that all of the equipment concerned was possessed under such a condition. Therefore, when the Collector seized the property, he had only the bailment lessee's interest—the present enjoyment—and when the bailment lessee defaulted this interest was lost to him and, therefore, to the Collector. This is the law of Pennsylvania; Scott, Law of Bailments 44ff. (1931); and it is this law which determines the quantum of the taxpayer's property in the chattels distrained. Raffaele v. Granger, supra.

As has been noted, since the bailment lease of the four pieces of equipment involved covered the same pieces as were covered by the earlier bailment leases and conditional sale, and since the bailor

---

2. It is interesting to note that under the terms of the alleged contracts, final performance under any of them would have been due in November, 1950.

3. Hearings were held on December 19, 1952 and September 29, 1954. Neither party at either hearing offered any testimony or any additional pertinent or relevant matter.

4. Distraint has been defined as "[t]he taking of a chattel from the possession of a wrongdoer or obligor to enforce the performance of an obligation." 27 C.J. S., Distraint, p. 361.

5. There appears to be no dispute concerning the tax liability of the taxpayer or the facts relating to the issuance of the warrants. Moreover, it appears that the distraint when made was entirely proper because the taxpayer, admittedly, had rightful possession of the chattels at the time. The default occurred only after distraint.

or lessor in the former was the same as the bailor or lessor and conditional vendor in the latter, we may assume that no title passed under the latter contracts at any time prior to the execution of the former. For to say otherwise in the absence of facts would be to presume that the proponent did not own the property in the face of his sworn statement that he did.

These considerations all lead to the conclusion that the case does not present any issue of fact and that as a matter of law all the interest of the taxpayer terminated upon its default if it had any interest in the chattels at all. Therefore, there is no property in the chattels which can properly be subjected to distraint by the Collector for the tax liability of the taxpayer Kline & Schmidt, Inc. No purpose will be served by hearing testimony and a decision on the merits granting the relief sought is in order. See Sauters v. Young, D.C.W.D. Pa.1954, 118 F.Supp. 361. Accordingly, the warrants will be quashed and all security given by the proponent in lieu of the chattels seized will be released.

An appropriate order will be entered.