Wm. P. **STUART,** Collector of Internal Revenue for the District of Arizona, Appellant,

v.

J. E. **WILLIS** and King-Hoover Construction Co., Appellees.

No. 14960.

United States Court of Appeals Ninth Circuit.

Jan. 16, 1957.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Fred E. Youngman and Davis W. Morton, Attys., Dept. of Justice, Washington, D. C., Jack D. H. Hays, U. S. Atty., Robert S. Murlless, Asst. U. S. Atty., Phoenix, Ariz., for appellant.

Andersen & Ray, H. Verlan Andersen and Kenneth C. Chatwin, Phoenix, Ariz., for appellees.

Before STEPHENS, FEE and BARNES, Circuit Judges.

JAMES ALGER FEE, Circuit Judge.

This is an appeal from the judgment of the District Court permitting recovery by appellees against the Collector of Internal Revenue for taxes found by the trial court to be improperly collected.

John E. and Edith P. Willis [1] and the King-Hoover Construction Company, Harry C. King and Claude E. Hoover entered into a contract on November 16, 1950, which recited that the parties became joint venturers. King-Hoover, a corporation, was in a preferred position to obtain a construction contract with the government. However, sufficient funds to finance the venture were lacking. By the contract above mentioned, Willis was to provide $50,000 additional financing for the construction project. As consideration, the corporation and King and Hoover guaranteed the return of this amount of capital, together with a profit, from funds held back by the government. This profit was to be interest at eight per cent per annum for the time the money was in use or twenty-five per cent of the net profits of the venture if that sum exceeded the agreed interest. Further, Lowell Monsees was by the contract appointed agent of Willis, to have joint control of all funds going into the project and to countersign all checks. King-Hoover bid on and obtained the contract from the Navajo Ordnance Depot for Railroad Rehabilitation. Willis advanced $57,800 to keep the job going.

On June 16, 1951, the Willises,[2] in order further to insure themselves against loss of their investment, obtained from King-Hoover a formal assignment of all sums due or to become due under this contract. There was not at any time due to the government payroll taxes exceeding $3,610.95 during the course of this contract.

1. While both Mr. and Mrs. Willis were parties to the joint venture agreement, they will be referred to collectively, for convenience sake, as "Willis."

2. Similarly, both Mr. and Mrs. Willis were the assignees named in this instrument, but will otherwise be referred to collectively as "Willis."

On or about November 6, 1951, the contract for the railroad rehabilitation job was successfully completed, and there was due and owing from the federal government thereon $12,278.18.

However, King-Hoover Construction Company had become indebted to the Collector for payroll taxes on other jobs which it was doing and which were not in any way connected with the job which was financed and performed by the joint venturers. The Collector filed liens upon the railroad rehabilitation job on July 13, August 28, October 5 and 19, 1951, totaling $12,278.18.[3] Of this sum, $3,610.95 only was due on the railroad rehabilitation project. Of the total sum levied, $8,667.23 consisted of taxes not due from the railroad rehabilitation project. Specifically, $5,489.49 of this sum was for Federal Unemployment taxes for the year 1951 on King-Hoover Construction Company alone. Such latter item was not due on October 5, 1951, the date of the collection letter therefor, November 6, 1951, the date of payment, or from any one or at all until January, 1952.

The joint venturers filed a claim for refund of the over-taxation which the Collector had applied to payment of the separate liability of King-Hoover Construction Company. Upon denial thereof, suit was filed in the District Court by the joint venturers. The trial court heard evidence at the trial and entered findings of fact, conclusions of law and judgment for plaintiffs. From this judgment, appeal is prosecuted.

The Collector contends that the trial court was without jurisdiction because grounds of recovery upon which the action was based were not set out in the refund claim; that there was no joint venture; that the assignment was not binding on the United States; that Willis had no lien upon the proceeds of the government contract prior and superior to that of the United States. It is claimed also that the trial court erred in allowing interest on the judgment.

■ The contention of the government that there was no jurisdiction in the District Court seems based upon an illogical distortion. The matter was not brought to the attention of the trial court, but this Court must consider it. The contention is that Willis was not a taxpayer and therefore the complaint and the judgment were invalid because these documents varied from the claim for refund, which was based upon the premise that the two were joint venturers who had paid a tax upon the joint payroll of the railroad construction job. It was clearly shown by the schedules filed with the claim of refund that the government agents had levied upon payments due from the United States to the joint venturers for accrued and impending taxes of one of the venturers—King-Hoover. But there is no variance in the complaint. There the joint venture and the supposed illegal levy are likewise alleged. The fault, according to the brief of the Collector, is in the fact that it is also alleged that the whole sum due the joint venturers had been assigned to one of them, Willis, and that the judgment of the District Court ran in his favor alone. In this there was no inconsistency. The joint venturers still filed the action as taxpayers. The basis of the claim of the complaint and the judgment was that the Collector could not levy on payments due the joint venturers for a tax liability of one of them alone.

■ The chief contention of the Collector seems to be that Willis and King-Hoover were not joint venturers. This was, of course, a pure question of fact. The District Court expressly found as a fact that these parties acted in that capacity. Likewise, it drew the same legal conclusion from the written instrument signed by all these parties on November 16, 1950. By its terms and intent, this instrument expressly postulated a joint adventure of Willis and the King-Hoover corporation and King and Hoover as individuals. It was condi-

---

3. These figures and dates are extracted from a schedule presented at page 19 of the brief of appellee.

tioned upon King-Hoover alone obtaining the railroad construction contract with the United States. But the fact that the contract, number DA–02–002–AVI–30, Navajo Ordnance Depot, Bellmont, Arizona, was entered between the United States and King-Hoover, as parties, did not affect the prior arrangement between Willis and the corporation.

There is no doubt King-Hoover used its own employees and building equipment on this job. It kept the books. Nowhere was a capital account set up for Willis. It made all payroll returns on this contract to the United States and the State of Arizona. Apparently no partnership income tax return was filed. There is no doubt that the contract between the parties described as joint venturers provided that there was to be a bond on the job. The profits, if any, were to be computed according to accepted accounting practices, and any extensions or additions to the contract were to be governed thereby. The money put up by Willis was to be used exclusively on this railroad construction project, and his agent was to have joint control over all funds used and to countersign all checks. Willis would have lost the money which he put up if the bonding company had taken over and completed the project. As a result, Willis contributed $7,799.97 more than he was required to in order that King-Hoover could complete the job. The evidence is clear that there was in fact a joint undertaking. Willis contributed the moneys, both that were called for in the agreement and by the subsequent advances. King-Hoover contributed the services. Both the construction company and Willis were to have an interest and a share in the prospective profits. The provision that Willis was guaranteed a certain minimum share in the profits could have no effect upon the problem of joint venture. If weight is given to all the facts, the trial court did not make a finding which was "clearly erroneous" upon the voluminous evidence when it stated:

"That the plaintiffs above named were partners in a joint venture organization doing business as and under the name and style of King-Hoover Construction Company and J. E. Willis, by reasons of the terms of that certain contract in writing dated the 16th day of November, 1950."

If the written contract alone were considered, a joint venture was established thereby.

"A joint venture as defined by the Internal Revenue Code is a partnership ' * * * through or by means of which any business, financial operation, or venture is carried, and which is not, within the meaning of this title, a trust or estate or corporation'. I.R.C. (1939) Sec. 3797(a) (2) [26 U.S.C.A. § 3797(a) (2)]."

If attention be now directed toward the alleged variance, it proves evanescent. Willis and King-Hoover were taxpayers. These parties jointly had a right to file claim of refund and action for recovery from the Collector. The mere fact that, by virtue of the original contract of joint venture or the subsequent assignment, Willis was entitled to all the funds recovered is of no consequence. No estoppel could be set up by the Collector based upon the fact that the government contract was with King-Hoover alone. In the event Willis were an entire stranger to the transaction and had had his money seized by the Collector, Willis could have brought action and recovered against Stuart (if the funds were still in possession of the latter).[4]

But the court found him to be a joint adventurer, and upon this the case is based. In a widely cited case, the facts of which are almost parallel to the cause at bar,[5] it was held that, when the United States had paid the remaining money due to the joint adventurer who signed the contract with the government, but who had paid out only a small amount of the money needed to

4. Stuart v. Chinese Chamber of Commerce of Phoenix, 9 Cir., 168 F.2d 709.

5. Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 29 L.Ed. 940.

perform the contract, his co-adventurers were entitled to recover the money so paid as they had done all the work to be done and put up all the money save $100, necessary to complete the job. This case also indicates that the statute prohibiting assignments of government contracts has no relevancy in this situation. And we so decide. It was therefore proper to enter a judgment in favor of Willis for the whole recovery.

■ But it is said the Collector had a right to treat the money withheld on a contract with King-Hoover as funds of the latter, irrespective of the fact that it is now established as a fact that actually these belonged to the joint adventure.

No statute gives to the United States the right to hold back these payments in order to satisfy extralateral obligations of the contractor. Indeed, the whole policy of legislation has been to allocate the payments to the completion of the project strictly according to the time and technical requirements of the contract and to the payment of labor and material claims against the work. In fact, it may be generally stated as a principle of our federal tax law that the power of the Collector never extends beyond the rights of the taxpayer upon whose property the levy is sought.[6] The Collector has rights " 'no higher than those of the taxpayer whose right to property is sought to be levied on.' "[7] It is one of the principles which must necessarily be observed in the law of taxation as in other fields that the rights and property of third persons must be respected. This is a broad guarantee and it covers many fields with which we are not presently concerned.[8] Specifically applied, however, it requires that the property of a third person is immune from seizure to enforce the liability of the person owing the tax.[9] If we carry out this principle, the interest of King-Hoover in the funds withheld could, of course, have been levied upon for payroll taxes incurred in its independent operations. The joint adventurers were also liable for all debts and obligations incurred in the performance of the government contract. The materialmen and laborers working on that job had the moral and legal right to the distribution of money earned upon the particular project. It could not be diverted to pay liabilities incurred by one of the joint adventurers in some other locality. The government agents had no more right to divert it than did other creditors. The fact that the joint adventurers, and particularly Willis, had paid the labor and material accounts on this project and needed the retained funds to reimburse themselves therefor is a strong supporting argument. But the principle is paramount. Agents of the government can neither seize nor withhold funds belonging to one party to pay obligations owed by another even to the United States.

■ There is no statute which permits the Collector to effect a tax liability to the United States against payments due on such a job to King-Hoover from the United States, even though the contract is in the name of King-Hoover alone. He is required to proceed by levy against the property of a taxpayer.[10] There is no statute which permits the Collector to levy upon the property of a partnership for the outside liabilities of the partner. Since the Collector levied upon the property of the taxpayers, Willis and King-Hoover, to liquidate a tax liability of King-Hoover alone, the levy was void.

Affirmed.

6. United States v. Winnett, 9 Cir., 165 F. 2d 149, 151.

7. F. H. McGraw & Co. v. Sherman Plastering Co., D.C., 60 F.Supp. 504, 512.

8. See Local 174, International Brotherhood of Teamsters v. United States, 9 Cir., 240 F.2d 387.

9. Raffaele v. Granger, 3 Cir., 196 F.2d 620; Brinker Supply Co. v. Dougherty, D.C., 134 F.Supp. 384. See also 9 Mertens, Law of Federal Income Taxation, § 49.163.

10. Internal Revenue Code of 1939, § 3692, 26 U.S.C.A. § 3692.