**ECONOMY PLUMBING & HEATING CO., INC., et al.**

v.

**The UNITED STATES.**

**No. 226–65.**

United States Court of Claims.

Dec. 12, 1972.

Raymond E. Saunders, Chicago, Ill., for plaintiff and third-party plaintiff, A. Charles Lawrence, Chicago, Ill., attorney of record for plaintiff and for Transamerica Ins. Co., third-party plaintiff Gilbert A. Cuneo, Washington, D. C., of counsel.

Mark Segal, Washington, D. C., with whom was Asst. Atty. Gen. Scott P. Crampton, for defendant.

Before COWEN, Chief Judge, and DAVIS, SKELTON, NICHOLS, KASHIWA, KUNZIG, and BENNETT, Judges.

ON PLAINTIFFS' MOTION FOR AMENDMENT OF OPINION AND JUDGMENT

SKELTON, Judge:

This suit was originally filed for the recovery of $477,587.66 representing a portion of an equitable adjustment on a contract entered into between Lieb Bros., Inc. (Lieb) and Economy Plumbing and Heating Co., Inc. (Economy) as joint venturers, and the United States for the construction of dormitories, mess halls, and other facilities at Scott Air Force Base near Belleville, Illinois, for the sum of $13,484,275.50. The work was reduced by a partial termination order, and was completed and accepted. In the meantime, Lieb was adjudged a bankrupt and is now insolvent. Its re-

ceiver did not participate in the appeal of this case and is not before the court. However, Transamerica Insurance Company (Transamerica), a surety and third-party plaintiff, intervened, because it acted as the surety on the performance and payment bonds of the contract.

In May 1960, the Corps of Engineers awarded the sum of $544,848.33 to the joint venture on its termination claim. The joint venture appealed to the Armed Services Board of Contract Appeals (ASBCA). In the meantime, the Internal Revenue Service (IRS) had asserted tax liens against Lieb. On November 18, 1960, without any notice to Economy or Transamerica, the General Accounting Office (GAO) paid $477,587.66 of the award to the IRS to satisfy the tax liens against Lieb. Of this amount, the sum of $4,576.80 was applied to unpaid payroll taxes, together with interest and penalty, owed by the joint venture in the performance of the contract. The remaining $473,010.86 was applied by the IRS to payroll and income taxes and interest and penalties owed by Lieb on other construction jobs it had performed which had no connection with the contract of the joint venture.

Economy and Transamerica (plaintiffs) filed timely income tax refund claims with the IRS for the $477,587.66. More than six months elapsed after the filing of such claims without any action having been taken by the IRS, so the plaintiff Economy filed this suit on July 8, 1965, and Transamerica intervened on May 2, 1966. After a trial in this court, our Trial Commissioner Mastin G. White, handed down a memorandum opinion on November 15, 1971, in which he recommended that plaintiffs be awarded judgment against the United States for the sum of $473,010.86. Nothing was said about interest. Thereafter, on February 3, 1972, the parties filed a joint motion for judgment under Rule 141(b) in which they asked that the opinion of the trial commissioner be adopted in which he had found that the plaintiffs were entitled to judgment against the United States for

$473,010.86, "together with interest as provided by law." Pursuant to this joint motion, the court entered a per curiam opinion on March 17, 1972, approving and adopting the memorandum opinion of the trial commissioner and awarded plaintiffs a judgment against the United States for said sum of $473,010.86. The judgment did not provide for interest. *See* Economy Plumbing & Heating Co. v. United States, 456 F.2d 713, 197 Ct.Cl. 839 (1972).

On April 13, 1972, plaintiffs filed a motion requesting that the opinion and judgment of the court be amended by awarding plaintiffs interest at the rate of six percent per annum from November 18, 1960, on the principal sum of $473,010.86. The defendant has contested this motion. The case is before us on such motion.

The sole question before us is whether or not plaintiffs are entitled to interest on their judgment from the time the amount thereof was paid by GAO to the IRS to satisfy Lieb's tax lien.

It is important to note that when plaintiffs filed this suit they sought recovery of funds due them as an equitable adjustment on the contract which they alleged had been wrongfully withheld by the government. The suit was clearly one to recover funds due under a contract.

In our per curiam opinion in this case mentioned above, we adopted the statement of our trial commissioner as follows:

\* \* \* This is an action for the recovery of $473,010.86, representing a portion of an equitable adjustment under contract No. DA–11–032–ENG–1232 ("the contract") that was—according to allegations in the petition—wrongfully withheld by the defendant. [Footnote omitted.] [*Id.* 456 F.2d at 714, 197 Ct.Cl. at 841.]

■■ The suit as filed was a contract action and not a suit for a refund of overpaid taxes. As stated above, we entered judgment in favor of the plaintiffs for the amount due them *under the*

*contract* as an equitable adjustment. Now the plaintiffs seek to change the whole theory of the case by claiming the suit was by taxpayers seeking a refund of overpaid taxes. The reason for this change in theory and tactics is clear. The plaintiffs want to collect interest on their judgment for the past 11 years and they well know that interest cannot be allowed on a contract claim against the United States unless the contract provides for interest, which is not the case here. *See* 28 U.S.C. § 2516(a) (1964).

The plaintiffs seek to bridge this obstacle by now contending that even though they were not originally taxpayers entitled to a refund of overpaid taxes, they became taxpayers when the government wrongfully applied their funds to the payment of Lieb's taxes. They contend further than when the government took this action, the funds so applied became overpayments of taxes by the plaintiffs, for which they filed claims for refunds, and that our judgment in their favor constituted a refund of their overpaid taxes. Consequently, they argue that they are entitled to interest on such amount. The plaintiffs say that the provisions of 28 U.S.C. § 2411(a) and Section 6611 of the Internal Revenue Code [1] entitle them to interest, especially since these laws provide for six percent interest on "any overpayment in respect of any internal revenue tax." They urge the proposition that this language fits their situation because the application of their funds to

Lieb's taxes was an "overpayment in respect of [an] internal revenue tax."

The defendant contended in its answer and still argues that this suit was not one brought by a taxpayer suing for a refund of its taxes, and denies that this suit arose under revenue laws requiring the filing of a claim for refund. It says that the plaintiffs are not taxpayers in this case, but that Lieb was the taxpayer. Defendant says further that plaintiffs never overpaid their taxes and their recovery of contract funds in this case was not a refund of overpaid taxes. Consequently, defendant contends that plaintiffs cannot recover interest on their judgment, because no statute authorizes it and the contract contains no provision for interest, citing Rosenman v. United States, 323 U.S. 658, 65 S.Ct. 536, 89 L.Ed. 535 (1945).

We agree with the defendant that the plaintiffs are not taxpayers in this case with respect to these funds within the meaning of the revenue laws. Lieb was the taxpayer and it is not a party to this action. While it is true that there was a misapplication of plaintiffs' funds to the payment of Lieb's taxes, this wrongful act did not result in plaintiffs becoming taxpayers to the extent of the misapplied funds. Neither was there any overpayment of plaintiffs' taxes. In fact, the only taxes of the plaintiffs that were paid out of the contract award was the $4,576.80 applied on the payroll taxes of the joint venture which was not contested by the plaintiffs and is not involved in this case.

---

1. § 2411. Interest.
   (a) In any judgment of any court rendered (whether against the United States, a collector or deputy collector of internal revenue, a former collector or deputy collector, or the personal representative in case of death) for any overpayment in respect of any internal-revenue tax, interest shall be allowed at the rate of 6 per centum per annum upon the amount of the overpayment, from the date of the payment or collection thereof to a date preceding the date of the refund check by not more than thirty days, * * *.

§ 6611. Interest on overpayments.
   (a) Rate.
   Interest shall be allowed and paid upon any overpayment in respect of any internal revenue tax at the rate of 6 percent per annum.
   (b) Period.
   Such interest shall be allowed and paid as follows:
   *     *     *     *     *
   (2) Refunds.
   In the case of a refund, from the date of the overpayment to a date (to be determined by the Secretary or his delegate) preceding the date of the refund check by not more than 30 days, * * *.

The filing of the claims for refund by the plaintiffs did not help them, because the claims were unnecessary and of no consequence since plaintiffs were not taxpayers who had overpaid their taxes.

█ In support of the foregoing conclusions, we wish to point out and emphasize that Congress has established a well-defined and comprehensive administrative system for the recovery of overpaid taxes by taxpayers. All *taxpayers* who have overpaid their taxes are within this system and must follow the appropriate procedures and regulations, including the timely filing of claims for refunds for overpayment of taxes, if they are to have the benefits of the system. On the other hand, persons *who are not taxpayers* are not within the system and can obtain no benefit by following the procedures prescribed for taxpayers, such as the filing of claims for refunds. For example, there have been many cases where parties have sued to enjoin the assessment or collection of their moneys to pay the taxes of another, notwithstanding Section 263 of the Internal Revenue Code of 1939 (26 U.S.C. § 3653 (1952 ed.)) that provided that "no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court."[2] The courts have allowed these suits because the parties filing the suits were not taxpayers and were outside the revenue system of which the above statute is a part. *See* Long v. Rasmussen, 281 F. 236 (D.Mont.1922); Rothensies v. Ullman, 110 F.2d 590 (3d Cir. 1940); Raffaele v. Granger, 196 F.2d 620 (3d Cir. 1952); and Bullock v. Latham, 306 F.2d 45 (2d Cir. 1962). In Long v. Rasmussen, the court said:

* * * They [the revenue laws] relate to taxpayers, and not to nontaxpayers. The latter are without their scope. No procedure is prescribed for nontaxpayers, and no attempt is made to annul any of their rights and reme-

dies in due course of law. * * * [*Id.* 281 F. at 238.]

In other cases suits have been filed by nontaxpayers whose property has already been taken to pay the taxes of others, without filing claims for refund, and such suits have been allowed against the Collector or District Director of Internal Revenue in actions similar to the old action in assumpsit for money had and received, even though lacking in statutory authority. *See* Stuart v. Chinese Chamber of Commerce, 168 F.2d 709 (9th Cir. 1948); Rutledge v. Riddell, 186 F.Supp. 552 (S.D.Cal.1960); Oil City Nat'l Bank v. Dudley, 198 F. Supp. 849 (W.D.Pa.1961). In Stuart v. Chinese Chamber of Commerce, *supra*, the court said:

Under the circumstances here recited it is obvious the appellees [whose property had been seized by the IRS to pay the taxes of another] are not taxpayers in the strict sense of the word, and therefore they do not come within the orbit of the income tax laws here invoked. * * *

* * * * * *

The appellees could not have maintained a suit for refund as could a taxpayer from whom a tax had been illegally collected; their only recourse was to bring suit to recover possession of the property of which they claimed to be owners. * * * [*Id.* 168 F.2d at 712.]

The above quotation fits our case like a glove. Our plaintiffs are not taxpayers and could not sue for a tax refund as a taxpayer could. All they could do was to sue to recover their property, which was the funds due them as an equitable adjustment under the contract, and this is exactly what they have done.

The above cases are illustrative of the proposition that a nontaxpayer is outside the administrative system set up for the collection of a refund of overpaid taxes, and is not required to file a claim

2. Amended November 2, 1966, by Pub.L. 89–719, Title I, § 110(c), 80 Stat. 1144. See 26 U.S.C.A. 7421 and footnotes.

for refund to recover money taken from him to pay the taxes of another. The case of Kirkendall v. United States, 31 F.Supp. 766, 90 Ct.Cl. 606 (1940) is squarely in point. There a third party (Kirkendall) sued to recover money that had been taken from him to pay the taxes of another. We held that there was an implied contract on the part of the government to make restitution of the money, and that no claim for refund was necessary because the plaintiff was not a taxpayer. Of particular importance in the case before us is the fact that in *Kirkendall* the court did not allow interest on the judgment of restitution. The only difference between that case and the case before us is that in our case the plaintiffs filed claims for alleged refund, whereas, in Kirkendall no claim was filed. In both cases the plaintiffs were nontaxpayers. We do not think the filing of claims for refunds in the present case makes any difference. The plaintiffs here were outside the administrative system established for the filing of claims for refunds of overpaid taxes and were not required to file them. The fact that they did file such claims did not entitle them to any of the rights or benefits of the tax refund administrative system. It follows logically that a nontaxpayer cannot overpay taxes and consequently there is no overpayment for him to claim by way of refund.

We think the *Kirkendall* case was properly decided and is dispositive of the present case. The payment of Lieb's taxes with the money due plaintiffs under the contract did not convert such contract funds into an overpayment of their taxes nor make taxpayers of the plaintiffs. Neither did the mere filing of claims for refunds make plaintiffs taxpayers when none of the requisites of the status of taxpayers were present.[3] The fact that plaintiffs filed such claims did not convert them into claims for overpayment of taxes. We so held in the case of Ray v. United States, 453 F. 2d 754, 197 Ct.Cl. 1 (1972), when we said:

The mere fact that plaintiff submitted claims for refunds with the Internal Revenue Service * * * does not convert his claim into one for overpayment of taxes. [*Id.* 453 F.2d at 758, 197 Ct.Cl. at 9.]

In the *Ray* case, the plaintiff was retired by the Air Force on a longevity basis and during his period of retirement based on length of service the Air Force withheld a portion of his retirement payments and paid them to the IRS who applied them to plaintiff's income taxes. After a time the plaintiff applied to the Air Force Board for the Correction of Military Records to change his retirement from a longevity basis to one based on disability. This was done and the Air Force paid him the difference between active duty pay and retirement pay, but did not pay him the amounts withheld and paid on his income tax. The Finance Center advised him to inquire of the IRS for possible tax refund. The plaintiff then filed claims for refund of income taxes with the IRS, who refunded such funds for three years but denied a refund for five other years on the ground they were time barred. The plaintiff then filed suit in this court for the five year payments that had been withheld by the Air Force. Although plaintiff had filed claims for refund with the IRS, and although he was a taxpayer, we held that his suit was not a suit for refund of taxes, but one against the Air Force for unpaid retirement benefits. We said:

* * * It is the Air Force which erroneously withheld from his retirement pay amounts approximately equal to his supposed tax liability, not the IRS. * * * It is the Air Force, then, which is liable to plain-

---

3. The term "taxpayer" in this opinion is used in the strict or narrow sense contemplated by the Internal Revenue Code and means a person who pays, overpays, or is subject to pay his own personal income tax. (See Section 7701(a)(14) of the Internal Revenue Code of 1954.) A "nontaxpayer" is a person who does not possess the foregoing requisites of a taxpayer.

tiff for the monies it erroneously exposed to taxation. * * * [*Id.* 453 F.2d at 757, 197 Ct.Cl. at 8.]

* * * * * *

. *· * * It is simply a matter of correcting the pay account between the serviceman and the United States. * * * [*Id.* 453 F.2d at 758, 197 Ct.Cl. at 9.]

In that case, we entered judgment for the plaintiff on the theory that his suit was not one for the recovery of a tax refund but one to recover retirement pay from the Air Force. In that connection, the court held further:

* * * Since this is not a claim for refund of taxes paid, but for "pecuniary benefits" wrongfully denied, cases cited by defendant are not in point. * * * Here, since plaintiff is not claiming under the Code, he need not preserve his claim according to its provisions.

* * * * * *

* * * Here the Board involved his changed plaintiff's retirement status and plaintiff can therefore say, * * * that his right is independent of the tax laws. [*Id.* 453 F.2d at 758, 197 Ct.Cl. at 9–10.]

In that case we held that proof of status is required to recover an overpayment of taxes under the Internal Revenue Code, saying:

* * * Proof of status is the admitted condition precedent for recovery of overpayment of taxes under the Internal Revenue Code § 6511, * * *. [*Id.* 453 F.2d at 757, 197 Ct.Cl. at 8.]

We have considered the *Ray* case in detail (although it is distinguishable as to some of the facts in our case), because it is a recent decision of our court and many of the questions there decided strongly support the conclusions reached in the present case. We refer to the following:

1. In that case we held that proof of status (*i. e.*, that of a taxpayer who had overpaid his income taxes), was a condition precedent to recovery under the Internal Revenue Code. Here the plaintiffs fail that test because they were not taxpayers and had not overpaid *their* income taxes.

2. The mere fact that a claimant files a claim for refund does not convert his claim into one for overpayment of income tax. That is the situation here.

3. There, although plaintiff's retirement payments were delivered to the IRS, his claim for such payments in this court was not a claim for refund of taxes, but a claim against the Air Force. Here, in like manner, the claim of plaintiffs was not one for a refund of overpayment of income tax, but a claim for contract funds delivered by the Corps of Engineers and the GAO to the IRS.

4. There, the Air Force owed plaintiff the money, not the IRS. Here the Corps of Engineers owed the plaintiffs the contract money, not the IRS.

5. There, the plaintiff was not claiming under the Internal Revenue Code. Here, the plaintiffs were not suing under the Code when they filed suit, but were seeking the funds due them under the contract.

6. There, the plaintiff was a taxpayer and the withheld payments had been applied to his income tax. He had filed a claim for refund and conceivably could have argued that he was seeking a refund of overpaid·taxes under the Code. We held that was not the case. Here, the case is much stronger for the government because the plaintiffs were not taxpayers and had not overpaid their taxes and were not seeking recovery under the Code. This is the most important distinction between the two cases.

In the *Ray* case, the plaintiff waived any claim for interest. This is understandable because there is no authority for awarding him interest on a recovery of retirement payments from the Air Force. Nevertheless, our decision in that case on other questions show beyond doubt that plaintiffs are not entitled to interest in the present case.

■ We do not think that the provisions of 28 U.S.C. § 2411(a) and Section

6611 of the Internal Revenue Code providing for interest at the rate of six percent per annum upon "any overpayment in respect of any internal-revenue tax" quoted above, which is relied upon by the plaintiffs, has any application to this case. We interpret those statutes as applying only to taxpayers who have overpaid their taxes, have filed a timely claim for refund, and are within the administrative system providing for the recovery of overpaid taxes and are entitled to its benefits. The plaintiffs have none of these prerequisites, except they did file claims for alleged refunds.

The plaintiffs cite and rely heavily upon the case of Stuart v. Willis, 244 F. 2d 925 (9th Cir. 1957). In that case the government levied upon, seized, and applied the funds of a joint venture, composed of two parties, due under a completed government contract, to the tax liability of one of the joint venturers that had accrued on other jobs not related to the joint venture contract. *Both joint venturers* filed claims for refund and later sued the District Collector of the Internal Revenue Service. The trial court held the levy to be void and awarded the joint venturers judgment for the misapplied funds, plus interest at six percent from the date of the misapplication of the funds by the government. The judgment was affirmed by the Ninth Circuit Court of Appeals. A careful reading of the decisions of the trial and appellate courts in that case reveals that there was no discussion or treatment of the interest issue nor any showing whatsoever that justified the awarding of interest from the date of payment to those plaintiffs under the Internal Revenue Code or other laws of the United States. The only mention of interest by the circuit court in its opinion was its comment that "it is claimed

also that the trial court erred in allowing interest on the judgment." Since nothing more was said about interest in the court's opinion, it would appear that the court either (1) allowed interest from the date of the misapplication of the funds, as the trial court had done, on the theory that the suit of plaintiffs was one for the refund of their overpaid taxes, in which case the action of the court was contrary to the above-cited authorities, or (2) the court allowed interest *on the judgment* of the trial court only from the date of the judgment, under 28 U.S.C. § 2411(b) (1964), which authorizes interest at the rate of 4 percent per annum on a judgment in a district court against the United States on a claim under 28 U.S.C. § 1346, which is not under the internal revenue laws. The granting of interest *prior to* judgment under Section 1346 is improper. *See* Eastern Serv. Management Co. v. United States, 363 F.2d 729 (4th Cir. 1966). There the court held:

> The granting of interest prior to the judgment is incorrect. 28 U.S.C. A. § 2411(b) and 31 U.S.C.A. § 724a. [*Id.* at 733.]

Title 31 U.S.C. § 724a provides that a judgment of a *district court* against the United States for less than $100,000 to which provisions of Section 2411(b) apply, shall bear interest only when the judgment is final after appeal and then only from the date of the filing of the transcript with the GAO to the date of the mandate of affirmance. When such a judgment is rendered by the *Court of Claims,* interest thereon shall be payable in accordance with Title 28 U.S.C. § 2516(b) from the date of the filing of the transcript with the GAO.[4]

■ These authorities appear to be conclusive that interest cannot be allowed prior to judgment on a claim

4. 28 U.S.C. § 2516(b) provides in part as follows:

(b) Interest on judgments against the United States affirmed by the Supreme Court after review on petition of the United States shall be paid at the rate of four percent per annum from the date of the filing of the transcript of the judgment in the Treasury Department to the date of the mandate of affirmance. * * * (June 25, 1948, ch. 646, 62 Stat. 978; Sept. 3, 1954, ch. 1263, § 57, 68 Stat. 1248.)

against the United States, except on overpayment of income tax claims as authorized by Title 28 U.S.C. § 2411(a) or unless provided for in a statute or contract as provided in Title 28 U.S.C. § 2516(a). None of these excepted situations exist in the present case..

At any rate, it appears that the court in Stuart v. Willis, *supra,* did not consider the interest question in depth as we have done, and we decline to follow its decision with regard to interest.

The plaintiffs also contend that we should allow interest in this case because of the enactment of the Federal Tax Lien Act of 1966 which provides in Sections 7426(b)(2)(B) and 7426(g)(1) of the Internal Revenue Code [5] that interest shall be allowed where property is wrongfully levied upon and taken by the IRS. The plaintiffs then cite 28 U.S.C. § 2516(a) to show that this court has jurisdiction to award interest where an Act of Congress expressly provides for its payment. The defendant counters this argument by saying that Section 7426 only authorizes suits to be brought in the district courts, citing the following language of technical explanation of 1966–2 Cum. Bull. 869:

> Section 7426. Civil actions by persons other than taxpayers.
>
> (a) Actions permitted.
>
> \* \* \* Section 202 of the bill grants U.S. district courts original jurisdiction over actions brought under section 7426 \* \* \*.

Defendant also cites H.R.Rep. No. 1884, 89th Cong., 2d Sess. 28 (1966–2 Cum. Bull. 815, 834), which states:

> The bill makes provisions for three new types of actions all of which may be brought only in Federal district courts.

■ We do not have to decide this jurisdictional issue, as we do not believe Section 7426 applies to this case because it was not enacted until 1966, whereas the government misapplied plaintiffs' money on November 18, 1960. Conse-

quently, the statute was not in effect at the time the events in this case occurred.

However, the fact that the plaintiffs seek to recover under Section 7426 has an important bearing on another aspect of this case. The heading or caption of the section is as follows:

> § 7426. Civil actions by person *other than taxpayers.* [Emphasis supplied.]

The action of the plaintiffs in saying this section applies to them is a clear indication that they are not "taxpayers" and that they do not regard themselves as taxpayers within the meaning of the Internal Revenue Code. This lends support to our interpretation of the meaning of the term "taxpayer" in this case as expressed in footnote 3, *supra.* Section 7426 is further significant in the instant case, because it shows that at the time it was enacted in 1966, Congress considered that persons in the position of the plaintiffs were not taxpayers within the meaning of the IRS. This is shown not only by the caption of the section, but also by its provisions wherein persons who are not taxpayers are described as any person "other than the person against whom is assessed the tax out of which such [wrongful] levy arose." That is precisely the situation of the plaintiffs, as no tax has been assessed against them, but was assessed against Lieb. Therefore, Congress has, in effect, described plaintiffs as nontaxpayers, and apparently plaintiffs have agreed that this description is correct. We also agree.

■ Plaintiffs argue that interest should be awarded to them because defendant signed a joint motion with them to the court requesting the adoption of the trial commissioner's opinion which provided for a judgment in favor of the plaintiffs for $473,010.86, "together with interest as provided by law." The defendant says that it has contended from the beginning that this is not a tax

---

5. Section 110(a) Federal Tax Lien Act of 1966, Pub.L. 89–719, 80 Stat. 1125.

refund suit, but a suit to recover contract funds due plaintiffs as an equitable adjustment and that there is no law that allows interest on a recovery of that kind. Consequently, argues defendant, the phrase "interest as provided by law" in the joint motion was not an agreement to pay interest and did not confer any right upon the plaintiffs to receive interest. We agree with the defendant.

Finally, the plaintiffs say that since the government had their money for over 11 years, it is right and just for the government to have to pay interest. We agree that equity and justice is on the side of the plaintiffs, but unfortunately interest cannot be collected from the government on that basis. The Supreme Court said in United States v. N. Y. Rayon Importing Co., 329 U.S. 654, 67 S.Ct. 601, 91 L.Ed. 577 (1947):

> * * * Had Congress desired to permit the recovery of interest in situations where the Court of Claims felt it just or equitable, it could have so provided. The absence of such a provision is conclusive evidence that the court lacks any power of that nature. * * * [*Id.* at 660, 67 S.Ct. at 604.]

*See also,* United States v. Thayer-West Point Hotel Co., 329 U.S. 585, 67 S.Ct. 398, 91 L.Ed. 521 (1947).

We hold that the plaintiffs are not entitled to interest on their claim from the date of the misapplication of their funds (November 18, 1960), until paid.

Accordingly, the motion of plaintiffs to amend the opinion and judgment of the court so as to provide for interest is denied.

NICHOLS, Judge (dissenting):

Respectfully, I feel obliged to dissent from Judge Skelton's able and exhaustive opinion, and will try to state the reasons why, though briefly, without extended analysis. There is no need to state the facts, which the majority opinion does correctly.

I agree the Federal Tax Lien Act of 1966, P.L. 89–719, 80 Stat. 1125, does not help this plaintiff, and I do not consider it further.

I see no reason why a claimant may not put on the hat of a taxpayer, or reject it, as he chooses, in a situation such as we have here. He can make his choice according to his position. He may file a claim for refund and, if it is timely, he may recover lawful interest. Stuart v. Willis, 244 F.2d 925 (9th Cir. 1957). If it is not timely, he may proceed down whatever other avenue to relief the law provides, sacrificing interest. The principal amount recovered would not necessarily be the same, since a claim for refund calls for a determination whether a person has overpaid his taxes, generally, and if so, in what amount. United States v. Memphis Cotton Oil Co., 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619 (1933), and see below.

The Internal Revenue Service determined administratively that the fund here involved belonged to Lieb, a bankrupt and delinquent taxpayer. Under the applicable part of the 1954 Code, 26 U.S.C. § 6321 and § 6331(a) they had to make such a determination to have a color of right to levy. I see no reason why a person making claim to the fund is not challenging a tax decision of the IRS like any other taxpayer. Simply as a matter of semantics it would seem no one has better right to call himself a taxpayer, than one whose property has been seized to pay a tax. A purely tortious seizure, not made under color of the Internal Revenue laws, would present a different case, with which I do not deal.

The dictum the court quotes from Stuart v. Chinese Chamber of Commerce, 168 F.2d 709 (9th Cir. 1948), is really the strongest authority the majority view has. As the court says, there is a similar dictum in Kirkendall v. United States, 31 F.Supp. 766, 90 Ct.Cl. 606 (1940). It is in each case only dictum, however, because the owners of the property illegally seized had not filed

timely claims for refund, and whatever remedy they had under the Internal Revenue laws was not before the court. The two District Court cases cited after *Stuart* contain nothing in conflict with my conclusions. Long v. Rasmussen, 281 F. 236 (D.Mont.1922), and the cases following it, cited by the court, deal with the award of injunctive and other extraordinary relief to persons whose property is seized or distrained to satisfy the tax debt of another; remedies not allowed to "taxpayers" contesting taxes. They do not hold that such a person may not put on the hat handed him and proceed as a "taxpayer," if he is willing to conform to the limitations and provisos of the Code, including application for refund.

The majority misreads Ray v. United States, 453 F.2d 754, 197 Ct.Cl. 1 (1972). We did not hold that Colonel Ray had to proceed outside the Internal Revenue laws. He had, in fact, filed claims for refund within them, and received refunds, with interest, for open years. The source of his necessity to sue here was that for earlier years, the time to file refund claims had expired. As to open years, we considered he had an election. The best proof of this is that we cited and quoted from Prince v. United States, 119 F.Supp. 421, 127 Ct. Cl. 612 (1954). That was a case almost identical with *Ray's*, but for the fact that *Prince's* claims for refund had been timely. We held that he was entitled to *recover, with interest according to law.* Thus it is clear that a person in Colonel Ray's position, and Prince's, as to years not barred, has an election to direct his claim against the IRS, with concomitant interest, or without interest against the agency that withheld a portion of his retirement pay to satisfy taxes not due. Besides the longer period of limitations, there was another advantage concomitant to the latter choice. Defendant argued that we could not simply award the funds withheld, because some of them may have been applied to satisfy other and still valid tax obligations. We answered that along the avenue Colonel

Ray had chosen, we were not obligated to redetermine his taxes. Defendant would be relegated to its remedies under tax benefit rules. Clearly, the refund claims for the open years called on the IRS to redetermine Colonel Ray's taxes, and presumably it did.

If *Ray* and *Prince* enjoyed an election, why not plaintiff here? The real difference between the *Ray* and *Prince* cases, and the case at bar is that *Ray* and *Prince* were "taxpayers" not just as we all are, but in the more restricted sense that the funds in dispute had been withheld to pay taxes that, if anyone's were theirs, whereas, in this case we now know that in that limited sense, plaintiff here was not a "taxpayer".

I stress "we now know". Lieb, the "taxpayer" whose tax liability the IRS sought to enforce, was the sole signatory of the contract under which the equitable adjustment here involved came into being. Naturally the IRS thought Lieb, the "taxpayer" was owner of the fund. It took a trial and adjudication here to disabuse it of that notion. Our commissioner found, with our approval, that the owner of the fund was really a joint venture, of which Economy was a member. Antecedently considered, whether the suit was brought as by a "taxpayer" under the Internal Revenue Code or by a government contractor would have appeared most doubtful. There does not seem to be any reason in the nature of things why Congress should have intended to achieve a wholly different result depending on whether money has been withheld for taxes from a tax exempt person (*Prince*) or (as here) seized to collect taxes from one other than the owner. If, in either case, the IRS can give the money back—as I am sure it could and would have, if satisfied Lieb was not the owner—it is reasonable to begin by asking the IRS to do so, *i. e.*, filing a claim for refund. The fine distinction drawn by the majority would have created practical difficulties at the working level, but for the statutory relief now available. Over the years, as in *Kirkendall* and in the *Ray* case, defend-

ant has persisted in the defense that persons in the instant situations are "taxpayers", therefore cannot recover absent claims for refund. I would now at last concede them the premise, even though I think the conclusion does not follow.

The literal language of the pertinent statutes does not help the court, the "taxpayer"—"non-taxpayer" dichotomy not being found therein. 26 U.S.C. § 6611 allows interest upon "any overpayment in respect of any internal revenue tax." By 26 U.S.C. § 6401(c) "an amount paid as tax shall not be considered not to constitute an overpayment solely by reason of the fact that there was no tax liability in respect of which such amount was paid." By 28 U.S.C. § 2411(a) a judgment for "any overpayment in respect of any internal-revenue tax" may include interest on the amount of the overpayment. We note that at one time the law expressly provided that courts could award interest for "any internal-revenue tax erroneously or illegally assessed or collected, or for any penalty collected without authority *or any sum which was excessive or in any manner wrongfully collected, under the internal-revenue laws."* [Emphasis supplied.] Revenue Act of 1921, 42 Stat. 227, 316. If the disappearance of the emphasized language has any significance respecting the instant controversy, the parties no doubt would have so advised. It would appear the present § 6401(c) was broadly written to provide an effective substitute accomplishing the same ends.

Finally, it is unavoidable that the decision today places us in conflict with the Ninth Circuit's Stuart v. Willis, *supra*. This court makes the untenable suggestion that maybe the Ninth Circuit awarded interest only from the date of judgment. The plaintiff has furnished us a copy of the trial court's findings of fact, conclusion of law, and judgment, unreported, but of unchallenged authenticity, certified by the clerk. The judgment, dated June 8, 1955, recites that it awards interest at 6% from November

6, 1951, apparently the date of the levy, as plaintiff had filed its claim for refund on December 26, 1951. The Ninth Circuit panel recites that the defendant Collector claims this award of interest was error (p. 927) and it affirms, discussing other issues but not this one.

DAVIS, Judge, joins in the foregoing dissenting opinion.