United States Court of Appeals,

Fifth Circuit.

No. 93-7567.

VALLEY ICE & FUEL COMPANY, INC., Plaintiff-Appellant, Cross-Appellee,

v.

UNITED STATES of America, Defendant-Appellee, Cross-Appellant.

Sept. 2, 1994.

Appeals from the United States District Court for the Southern District of Texas.

Before GARWOOD, JOLLY and SMITH, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Valley Ice & Fuel Company ("Valley"), a Brownsville, Texas retailer of fuel oil, filed three refund claims for excise taxes paid on fuel oil that it sold to Mexican nationals in the last three quarters of 1988. The Mexican nationals owned and operated vessels that entered American waters to purchase fuel oil from Valley and then returned to Mexican waters. The Internal Revenue Service ("IRS") refunded the second quarter amount, but refused to refund the third and fourth quarter amounts. The IRS then demanded repayment of the second quarter amount and assessed a penalty. Unable to settle their differences administratively, the parties sought relief in claims and counterclaims in the district court. The district court held that the IRS could retain the third and fourth quarter amounts, Valley could keep the refund of the second quarter amount, and the IRS could not assess a penalty on Valley. Still dissatisfied, both parties appeal. Because we hold that

1

Valley is not entitled to a refund under the applicable statute, we reverse the district court's ruling that Valley may retain the refund of the second quarter amount and affirm the IRS's retention of the third and fourth quarter amounts;  but because Valley nevertheless acted reasonably, we affirm the inapplicability of the penalty to Valley.

I

Valley is a Brownsville, Texas retailer of maritime supplies, including fuel oil.  Valley purchased fuel oil from Exxon and sold that oil to retail customers.  Section 10502 of the Revenue Act of 1987 moved the point of collection of excise taxes on fuel from the sale made by the retailer to the sale made by the "producer."[1] Under this new excise tax provision, which was effective from April 1, 1988 to December 31, 1988, Exxon, a producer, was liable under 26 U.S.C. § 4091 for the excise tax on fuel oil it sold to retailers like Valley.  Thus, Exxon charged Valley a grossed-up purchase price for the fuel oil and forwarded the tax portion of the purchase price to the IRS.  Valley could recoup the portion of the purchase price representing excise tax by charging a grossed-up sales price to its domestic retail customers;  thus, the cost of the excise tax was passed to those customers.

Valley, however, also sold fuel to Mexican nationals who owned and operated Mexican-flagged vessels that entered the United States

---

[1] Revenue Act of 1987, Pub.L. No. 100-203, § 10502, 101 Stat. 1330-382, 1330-438, 1330-446 (1987) (prior to 1988 amendment) (entitled "Diesel Fuel and Aviation Fuel Tax Imposed at Wholesale Level").

solely to purchase the fuel and then returned to Mexican waters. Section 6427(*l* ) provided for the refund of the § 4091 excise tax when the fuel was to be used in a "nontaxable use" such as sales of fuel for export and sales of fuel to be used as supplies aboard foreign vessels. *See* 26 U.S.C. §§ 6427(*l* )(2), 4041(g)(3), (*l* ) (1988). Accordingly, Valley sought to recoup the excise tax portion of the purchase price it paid to Exxon with respect to the fuel it sold for use aboard the Mexican vessels.

Because of its unfamiliarity with the new law, Valley inquired of its certified public accountant ("CPA") regarding the appropriate method of recouping the cost of the excise taxes. Pursuant to its CPA's advice, Valley assumed that it could file for a refund under § 6427(*l* ).[2] This section allows the "ultimate purchaser" of fuel oil to be used for a nontaxable purpose to claim a refund for any excise taxes paid with respect to that fuel. Thus, Valley assumed that *it*—not the owners and operators of the Mexican vessels—was the "ultimate purchaser" of the fuel under § 6427(*l* ). Accordingly, Valley charged the owners and operators of the Mexican vessels a "net" sales price—a price that did *not* include the excise tax.

---

[2]26 U.S.C. § 6427(*l* )(1) provides:

> (1) In general.—Except as provided in subsection (k) and in paragraph (3) of this subsection, if any fuel on which tax has been imposed by section 4091 is used by any person in a nontaxable use, the Secretary shall pay (without interest) to the *ultimate purchaser* of such fuel an amount equal to the aggregate amount of tax imposed on such fuel under section 4091.

(Emphasis added).

3

During the last three quarters of 1988, the excise-tax on the fuel that it resold to Mexican nationals was $7,332,[3] $29,789, and $47,989, respectively.[4] Valley timely filed for a refund of each of these excise tax amounts. The IRS refunded the second quarter amount, $7,332, but, belatedly contending that Valley was not the "ultimate purchaser," refused to refund the third and fourth quarter amounts, which totalled $77,778. Subsequently, the IRS demanded that Valley return the $7,332 actually refunded and assessed a penalty with respect to this amount.

## II

After exhausting its administrative remedies, Valley filed a suit for the refund of the third and fourth quarter amounts of excise taxes. The IRS counterclaimed for the return of the refund of the second quarter amount and for a penalty under 26 U.S.C. § 6675 for filing an excessive refund claim. Both parties filed motions for summary judgment. The IRS argued that Valley was not entitled to a refund of excise taxes because under § 6427(*l* ) only the "ultimate purchaser" could claim a refund. The "ultimate purchasers," the IRS argued, were the owners and operators of the Mexican vessels. Thus, the IRS took the position that Valley should have recouped the excise taxes it paid with respect to fuel

---

[3]The second quarter amount, $7,332, represents the net of $8,082 of gross excise taxes less $750 of taxes subsequently paid by a customer of Valley.

[4]Because the new provision under which Valley had to pay the grossed-up price was effective beginning on April 1, 1988, the three amounts were for the second, third, and fourth calendar quarters of 1988, respectively.

oil sold to the owners of the Mexican fishing vessels by charging them a grossed-up price that included the excise tax, which then would have allowed the owners of the Mexican vessels to file for a refund under § 6427(*l* ).

The magistrate judge entered summary judgment for the IRS reasoning that Valley was not entitled to a refund of the third and fourth quarter amounts of the excise tax because Valley was not the "ultimate purchaser" of the fuel. The magistrate judge, however, exercised his equity power by ordering the IRS not to seek a refund of the second quarter amount, $7,332, and not to seek a penalty for Valley's refusal to return the refund of the second quarter amount. The district court adopted the summary judgment of the magistrate judge. Both parties appeal.

                                III

We address three issues in this appeal. First, whether Valley is entitled to a refund under § 6427(*l* ) of the excise taxes attributable to the fuel it sold to Mexican nationals during the third and fourth quarters of 1988. Second, whether the district court erred in using its equity powers to order the IRS not to seek the return of the allegedly erroneous refund of the excise taxes attributable to fuel Valley sold to Mexican nationals in the second quarter of 1988. Third, whether the district court erred in using its equity powers to order the IRS not to seek a penalty against Valley under § 6675. We review the district court's summary judgment *de novo. King Ranch, Inc. v. United States,* 946 F.2d 35, 36 (5th Cir.1991).

5

A

First, Valley asserts that it is entitled to a refund of excise taxes under § 6427(*l* ) because it qualifies as the "ultimate purchaser" of the fuel sold to the Mexican nationals. *See* 26 U.S.C. §§ 6427(*l* )(2), 4041(g)(3), (*l* ), 4221(d)(3) (1988). Despite purchasing the fuel for resale, rather than for its own use, Valley argues that in the context of exportation, as that term is used in the statute, it is an "ultimate purchaser" because it was the last purchaser of the fuel in United States commerce. Moreover, Valley argues that the purpose of the refund provision is to avoid imposing an excise tax on sales of fuel for use as supplies aboard foreign vessels, and that we should not frustrate that purpose by strictly defining "ultimate purchaser" to exclude retailers like Valley. Valley's arguments for a broad definition fail for several reasons: (1) such a definition flies in the face of the plain meaning of the words of § 6427(*l* ); (2) Valley did not export the fuel; and (3) the plain meaning definition of "ultimate purchaser" does not frustrate the congressional purpose not to impose the § 4091 excise tax on fuel sold for export or for use as supplies aboard foreign vessels.

Although § 6427 does not define the term "ultimate purchaser," the plain meaning of that term is simply the purchaser in the stream of commerce who is intended to use the product himself—as opposed to a middleman who intended to resell the product. Indeed, Congress has repeatedly defined the term "ultimate purchaser," in other contexts, as "the first person who

6

in good faith purchases [the product] for purposes other than resale." *See* 15 U.S.C. § 1231(g) (defining "ultimate purchaser" with respect to the disclosure of information with respect to the purchase of automobiles); 15 U.S.C. § 2821(9) (defining "ultimate purchaser" with respect to the disclosure of octane ratings with respect to the purchase of gasoline); 19 U.S.C. § 1627a(c)(4) (defining "ultimate purchaser" with respect to the purchase of unlawfully imported vehicles); 42 U.S.C. § 4902(4) (defining "ultimate purchaser" with respect to noise control prevention measures concerning purchased automobiles); 42 U.S.C. § 7550(5) (1988) (defining "ultimate purchaser" with respect to air pollution prevention measures concerning purchased motor vehicles). Thus, under the plain meaning of § 6427(*l* ), the "ultimate purchasers" of the fuel in the instant case were the Mexican nationals who, unlike Valley, purchased the fuel for their own use instead of for resale.[5]

---

[5]Valley's contention that § 6416(a)(3)'s inclusion of retailers, like Valley, in that statute's definition of "ultimate purchasers" supports the inclusion of retailers in § 6427(*l* )'s definition of "ultimate purchaser" is meritless. Section 6416(a)(3) provides:

> *For purposes of this subsection,* in any case in which the Secretary determines that an article is not taxable, the term, "*ultimate purchaser*" (*when used in paragraph (1)(B) of this subsection* ) includes a wholesaler, jobber, distributor, or *retailer*....

(Emphases added).

First, § 6416(a)(3)'s inclusion of "retailer" within the definition of "ultimate purchaser" is expressly limited to § 6416(a)(1)(B) and thus, does not impact the plain-meaning definition of the term found in § 6427(*l* ). Second, in contrast to its express inclusion of the term "retailer" in

Further, Valley's argument that we should modify the plain-meaning definition of "ultimate purchaser" when employed in the context of exportation misapprehends the facts presented here: Valley did not "export" the fuel. To export means to carry or send an item to another country. *See Canton R. Co. v. Rogan,* 340 U.S. 511, 515, 71 S.Ct. 447, 449, 95 L.Ed. 488 (1951).[6] Neither Valley nor its agents shipped or transported the fuel to Mexico for delivery, use, or sale there. Instead, Valley merely sold the fuel retail at Brownsville to the owners and operators of the Mexican vessels that were docked at Brownsville. Those foreign nationals then departed with the fuel to Mexican waters where it was applied to their own use. Thus, Valley is a retailer, not an exporter. Consequently, the nontaxable use of the fuel in this case is not based on exportation, § 4041(g)(3), but on the use of fuel as supplies aboard foreign vessels, §§ 4041(g)(1), 4221(d)(3).

---

the § 6416 definition of "ultimate purchaser," Congress' omitted "retailer" from the § 6427(*l* ) definition of "ultimate purchaser." Accordingly, we believe that had Congress intended § 6427(*l* ) "ultimate purchasers" to include intermediate "retailers," it would have simply said so as it did in § 6416. Under the rule of *expressio unius est exclusio alterius,* § 6416(a)(3) actually reaffirms that the plain meaning of "ultimate purchaser" in § 6427(*l* ) does not include a "retailer" like Valley.

[6]"Export" is defined as follows:

To carry or send abroad.... To send, take, or carry an article of trade or commerce out of the country. To transport merchandise or goods from one country to another in the course of trade. To carry out or convey goods by sea. Transportation from the United States to [a] foreign country.

BLACK'S LAW DICTIONARY 579 (6th ed. 1990) (citations omitted).

8

Finally, the plain-meaning definition of "ultimate purchaser" does not frustrate Congress' purpose not to impose excise tax on fuel oil sold for use as supplies aboard foreign vessels. Although Valley, as a retailer, could not recoup the excise tax it paid to Exxon as a portion of the purchase price of the fuel it sold to the owners and operators of the Mexican vessels through the § 6427(*l* ) refund procedure, Valley could recoup the cost of the tax by grossing-up the sales price it charged the Mexican nationals. The Mexican nationals, as "ultimate purchasers," could then file for a refund of the excise tax under § 6427(*l* ),[7] thus, fulfilling the congressional purpose to relieve the excise tax burden from fuel used as supplies aboard foreign vessels.

In sum, Valley failed to recoup the excise tax in the way the law allowed, i.e., by grossing up the price of the fuel it sold to the Mexican nationals. Thus, similar to a taxpayer that files for a justified refund one day late, Valley cannot now recoup the excise tax that it could have recouped had it merely employed the appropriate method.[8]

---

[7]Having foreign nationals file United States tax forms for a refund of excise tax is not a novel procedure. *See generally,* Rev.Rul. 69-406, 1969-2 C.B. 261 (providing a procedure for an "ultimate purchaser," who is not subject to United States income tax, to apply for refund of excise tax imposed on fuel used for an exempt purpose).

[8]In support of its motion for summary judgment, Valley submitted the affidavit of its CPA stating that an IRS agent had specifically told him that Valley could file for a refund under § 6427(*l* ). The IRS supplied the affidavit of the IRS agent in which he denied the allegations of Valley's CPA and stated that he informed Valley's CPA that only the owners of the Mexican vessels could file for a refund in a nonexport situation. Even if Valley did in fact rely on the erroneous advice of the IRS

9

Second, the government argues that the district court erred in using its equity power to order the government not to pursue the return of the second quarter amount of excise tax, i.e., $7,332. We agree.

The government is entitled to recoup the refund under the relevant law, 26 U.S.C. § 7405. Valley is not entitled to the refund under the relevant law, § 6427(*l* ). Equity has no power to change this wholly legal result. *See United States v. Coastal Refining & Mkt., Inc.,* 911 F.2d 1036, 1043 (5th Cir.1990) (citing *Clark v. Barnard,* 108 U.S. 436, 457, 2 S.Ct. 878, 890, 27 L.Ed. 780 (1883), and *Immigration & Naturalization Serv. v. Pangilinan,* 486 U.S. 875, 883-84, 108 S.Ct. 2210, 2216, 100 L.Ed.2d 882 (1988)). Thus, the magistrate judge erred in using equity to award Valley funds to which the law provides that Valley is not entitled.[9]

---

agent, however, we still could not grant Valley relief. Reliance on the erroneous advice of an IRS agent will not support a finding of equitable estoppel that justifies depriving the Treasury of funds for which the relevant statutes do not authorize disbursement. *See Office of Personnel Mgmt. v. Richmond,* 496 U.S. 414, 425-26, 110 S.Ct. 2465, 2472, 110 L.Ed.2d 387 (1990) (quoting *Knote v. United States,* 95 U.S. 149, 154, 24 L.Ed. 442 (1877)) (holding that the erroneous advice of a government official will not give rise to a claim of equitable estoppel against the government that would require payment of funds from the Treasury that the relevant statutes did not authorize); *Jones v. Department of Health & Human Services,* 843 F.2d 851 (5th Cir.1988) (denying equitable estoppel defense based on erroneous advice by a government agent with respect to social security benefits).

[9]Because we hold that the legal remedy afforded the IRS displaces equitable relief, we need not reach the government's argument that the Anti-Injunction Act, 26 U.S.C. § 7421, precludes the district court from issuing an injunction to prevent the IRS from collecting monies due it under statute.

C

Third, the government argues that the district court erred in using its equity powers to order it not to impose a penalty on Valley for claiming an excessive refund. Valley argues that regardless of the validity of the district court's equity-based order, it is not liable under § 6675 for the penalty because it had reasonable cause to claim the refund.[10] Specifically, Valley argues that it relied on the advice of its CPA in filing the refund claim. Although we agree with the government that equity will not bar the imposition of a statutory penalty, *see Coastal Refining & Mkt.,* 911 F.2d at 1043, we agree with Valley that it acted with reasonable cause.

"Whether the elements that constitute "reasonable cause' are present in a given situation is a question of fact, but what elements must be present to constitute "reasonable cause' is a question of law." *United States v. Boyle,* 469 U.S. 241, 249 n. 8, 105 S.Ct. 687, 692 n. 8, 83 L.Ed.2d 622 (1985). The *Boyle* Court held that an executor's reliance on an attorney to file the estate tax return did not constitute "reasonable cause" for failure to

_____

[10]26 U.S.C. § 6675(a) provides:

> In addition to any criminal *penalty* provided by law, if a claim is made under section ... 6427 (relating to fuels not used for taxable purposes) for an excessive amount, *unless* it is shown that the claim for such excessive amount is due to *reasonable cause,* the person making such claim shall be liable to a penalty in an amount equal to whichever of the following is the greater: (1) Two times the excessive amount; or (2) $10.

(Emphases added).

11

file the return because the relevant statute placed a clear obligation to file the return on the executor. *Id.* at 249-50, 105 S.Ct. at 692. Accordingly, any reliance by the executor on the attorney was a matter between those individuals and did not affect the legal obligation imposed upon the executor alone. *Id.* at 250, 105 S.Ct. at 692. The *Boyle* Court distinguished the obligation-to-file-a-return situation, in which reliance on an agent usually does not constitute "reasonable cause," from the interpretation-of-a-legal-issue situation, in which a taxpayer's reliance on his attorney may constitute "reasonable cause." *Id.* at 250-51, 105 S.Ct. at 692 (citing *Burton Swartz Land Corp. v. Commissioner,* 198 F.2d 558, 560 (5th Cir.1952) (holding that reliance on tax advice of accountant that personal holding company tax returns were not due under the relevant statutes constituted "reasonable cause" for not filing such returns)).

In the instant case, § 6675 obviously imposed no obligation on Valley to file for a refund. Further, the undisputed facts show that Valley's president took steps in an effort to comply with the rapidly changing law regarding excise taxes on fuel. Among these steps was Valley's seeking the advice of its CPA regarding the new law. After thorough discussions, Valley relied on the advice of its fully informed CPA regarding the interpretation of a new statute that was only in effect for nine months.[11] The CPA advised

_____

[11]Effective January 1, 1989, Congress amended § 4092(b) to include certain retailers in the definition of "producers"; thus, allowing such retailers to pay a net purchase price for fuel that excludes the excise tax cost. Technical and Miscellaneous Revenue Act of 1988, Pub.L. No. 100-647, § 3003,

12

Valley that, under the applicable law, Valley could file for a refund under § 6427(*l* ).  Although the CPA's legal interpretation failed ultimately to be correct, we hold that Valley's reliance on that legal interpretation by its tax expert constitutes "reasonable cause" for filing the refund claim under § 6675.  *See Boyle,* 469 U.S. at 251, 105 S.Ct. at 692 (stating, "[W]hen an accountant or attorney *advises* a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice").[12]  Accordingly, the IRS may not collect a penalty under § 6675 from Valley.

IV

For the foregoing reasons, the judgment of the district court is AFFIRMED with respect to the IRS's retention of the third and fourth quarter amounts, REVERSED with respect to the Valley's retention of the refund for the second quarter, and AFFIRMED with

102 Stat. 3342, 3616 (1988).

[12]In the late-filing context, the Treasury has indicated that the exercise of "ordinary business care and prudence" constitutes "reasonable cause."  Treas.Reg. § 301.6651-1(c)(1) (as amended in 1973).  *See Boyle,* 469 U.S. at 246 n. 4, 105 S.Ct. at 690 n. 4 (stating that the courts owe deference to the Treasury's definition of "reasonable cause" under *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844 & n. 14, 104 S.Ct. 2778, 2782 & n. 14, 81 L.Ed.2d 694 (1984)).  In the context of filing for excessive refunds, the IRS has indicated that even lack of knowledge of a relevant authority may constitute reasonable cause.  Internal Revenue Manual (CCH) § 4786(2) (Apr. 26, 1989) (Examination) (stating that "reasonable cause" under § 6675 "implies an unintentional error, such as mathematical or bookkeeping error, or a lack of knowledge of a Revenue Ruling, etc.").  Valley's error of misinterpreting a new statutory scheme based on the advice of its tax expert falls within this reasonable cause exception to the penalty for excessive refund claims.

13

respect to the denial of the IRS's assessment of a penalty under §
6675.

AFFIRMED in part, REVERSED in part, and RENDERED.