**AMIGO ENTERPRISES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–135T.**

United States Court of Federal Claims.

Aug. 5, 1998.

William A. Neilson, New Orleans, Louisiana, for plaintiff.

Michael F. Cox, with whom were Assistant Attorney General Loretta C. Argrett and Mildred L. Seidman, all of the U.S. Department of Justice, Washington, D.C., for defendant.

## OPINION

BRUGGINK, Judge.

This is an action to recover a federal excise tax on sales of diesel fuel that plaintiff, Amigo Enterprises (Amigo), alleges was erroneously assessed and collected. Jurisdiction is based on 28 U.S.C. § 1346(a)(1) (1994). Pending is defendant's motion for summary judgment. Oral argument is deemed unnec-

essary. For the reasons explained below, the court grants defendant's motion.

## BACKGROUND

Effective April 1, 1988, the Internal Revenue Code imposed an excise tax on the sale of diesel fuel by a producer or importer. *See* I.R.C. § 4091(a) (1988).[1] The tax did not, however, reach sales of diesel fuel between two entities that qualified as producers. *See* I.R.C. § 4093(b) (1988).[2] To qualify as a producer, an entity first had to apply with the Internal Revenue Service (IRS) for that status by sending in a Form 637 application. *See* I.R.S. Notice 88–30, 1988–1 C.B. 497, 503–04; I.R.S. Notice 88–132, 1988–2 C.B. 552, 554.

Amigo claims it submitted a Form 637 to the IRS on May 9, 1990. Although defendant has been unable to find a record of this submission, the court will assume for purposes of defendant's motion for summary judgment that the form was sent and received. In any event, the IRS did not respond and so Amigo again submitted a Form 637 on April 24, 1991. It is undisputed that the IRS did not respond to Amigo until March 24, 1992, at which time it sent Amigo a certificate of registry officially recognizing Amigo as a producer.[3]

From June 29, 1991, through March 23, 1992, before Amigo obtained its certificate of registry, it purchased diesel fuel from John R. Martinez, a fuel jobber. Amigo, who subsequently resold to ultimate users, was thus a middle link in the diesel-fuel distribution chain. In connection with his sales to Amigo, Martinez paid an excise tax to the IRS.

Martinez indicated on each invoice that the total price per gallon of diesel fuel was increased to include 20.1 cents, the amount of the excise tax already collected by the IRS on the transaction. Amigo paid the total price indicated on the invoices, including the amount attributable to the excise tax assessed on Martinez. It never paid money directly to the IRS. Amigo did not pass the increased costs on to its customers, some of whom used the fuel for tax-exempt purposes.

Amigo filed a refund claim with the IRS on May 28, 1993, seeking return of the money collected by Martinez attributable to the 20.1-cent-per-gallon excise tax. Amigo contended that, because the IRS should have certified it earlier as a producer, the transactions were tax-exempt. On March 6, 1995, the IRS disallowed Amigo's request for a refund. On March 4, 1997, Amigo filed this action seeking recovery of excise taxes for sales from June 29, 1991, through March 23, 1992, in the sum of $24,140.00 plus interest and costs.

## DISCUSSION

Amigo's complaint rests on two disputed assertions. The first is that the sales from June 29, 1991, to March 23, 1992, were exempt from excise tax because Amigo was a producer. Amigo acknowledges that the IRS never formally gave it that status but argues that it became a producer by operation of the law in place as of 1990 merely by virtue of its filing a Form 637 application without any need for further response by the IRS. The defendant argues that Amigo was not a producer with respect to the sales in question

---

1. Prior to 1988, the tax on diesel fuel had been imposed at the retail level under I.R.C. § 4041 (1982). Unless otherwise noted all references are to the official I.R.C. in effect during the relevant time period. The changes in the code with respect to the assessment and collection of an excise tax on diesel fuel will be developed below in greater detail.

2. The excise tax did not reach sales between a producer and a purchaser who ultimately used the fuel in a non-taxable use as defined in I.R.C. §§ 6427(1)(2) & (b)(1) (1988). *See* I.R.C. § 4093(c)(1) (1988). Section 6427 further provided certain ultimate fuel purchasers a limited right to a tax refund: "[I]f any fuel on which tax has been imposed by § 4091 is used by any

person in a nontaxable use, the Secretary shall pay (without interest) to the ultimate purchaser of such fuel an amount equal to the aggregate amount of tax imposed on such fuel under § 4091." I.R.C. § 6427(1)(1) (1988).

3. Amigo alleged in its original complaint that as of June 29, 1991, an IRS agent had informed Amigo that it would receive an exemption certificate as soon as all the proper paperwork had been filed. On July 29, 1997, this court ordered Amigo to supply the defendant with the name of the IRS agent who supposedly made this statement on or before August 8, 1997. Amigo has not done so, and the issue has not been raised in response to defendant's motion.

because it was not properly registered until it actually received a registration certificate from the IRS on March 24, 1992.

A second element necessary to Amigo's suit is that it have standing to sue. The defendant contends that Amigo has no standing because it never paid any money directly to the IRS. According to Amigo it is sufficient that it indirectly paid the tax through higher prices. Because this latter issue is controlling, we address it first.

## A. Standing

■ If Amigo has standing to sue, it derives not from direct payments to the IRS but from paying the tax indirectly in the form of higher fuel prices. Defendant does not dispute the factual premise behind Amigo's assertions, but contends that it is insufficient as a matter of law to confer standing. Defendant cites *Walsh Oil Co. v. United States,* 26 Cl.Ct. 426 (1992), a case involving the same statutory framework and a virtually identical fact scenario. Walsh Oil, also a middleman, initially completed and filed an application to qualify as a producer in April 1988. Communications failed between the IRS and Walsh and, as a result, the IRS closed its application file, never actually issuing Walsh a registration certificate. The company subsequently filed another application, and after a job-site inspection the IRS ultimately issued Walsh a registration certificate effective October 24, 1989. *See Walsh,* 26 Cl.Ct. at 427.

The court in *Walsh* denied plaintiff's claim for a refund in spite of the fact that it probably would have been technically qualified to register as a producer at the time of its initial application for that status:

[W]hile it is not disputed that plaintiff lost money as a result of its inability to comply with the new tax code, its arguments for relief necessarily fail because plaintiff lacks standing to sue. Plaintiff did not pay any tax under the statute.... [T]o maintain an action for the refund of taxes under the Internal Revenue Code, the plaintiff must be a taxpayer who has overpaid its own taxes.

*Id.* (citing *Collins v. United States,* 209 Ct.Cl. 413, 419 n. 2, 532 F.2d 1344 (1976) and *Economy Plumbing & Heating Co. v. United States,* 200 Ct.Cl. 31, 470 F.2d 585 (1972)). Ultimately the court concluded that "[Walsh] was not the 'person who paid the tax,' but a purchaser from that person" and, therefore, it could not sustain a claim against the IRS. *See id.*

The rationale in *Walsh* was adopted in *Bowen–Morrison Marketers, Inc. v. United States,* 820 F.Supp. 267 (W.D.Va.1993). Citing *Walsh* the court held that, "[d]espite [the fact] that such rationale is equitably distasteful because it tends to elevate a technical formality over substance, it is legally sound, [and] is consistent with the general rule that before a taxpayer may commence an action in federal court for refund the tax must be paid by the taxpayer...." *Id.* at 269.

The district court in *Cook Oil v. United States,* 919 F.Supp. 1556 (M.D.Ala.1996), came to a similar result, although the court did not dismiss the case for lack of standing. The court held there that the plaintiff was not entitled to a refund because "[t]he tax scheme governing this case does not require suppliers to pass the cost of the tax to the Plaintiff; therefore according to *Gurley,* the statutes did not tax the Plaintiff when it purchased the diesel fuel. The Plaintiff cannot obtain a refund from the Government if the Government never imposed a tax on the plaintiff." *Id.* at 1563 (citing *Gurley v. Rhoden,* 421 U.S. 200, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975) (holding that the legal incidence of a federal excise tax imposed upon "gasoline sold by a producer" falls upon the seller of gasoline and not the purchaser, who pays the tax in the form of higher prices at the pump)).

The court recognizes that the code itself created an exception to this analysis in the context of diesel-fuel sales. Pursuant to section 6427, ultimate users of diesel fuel, if the ultimate use is tax exempt, can recover that tax even though it has been paid indirectly:

[I]f any fuel on which tax has been imposed by section 4091 is used by any person in a nontaxable use, the Secretary shall pay (without interest) to the ultimate purchaser of such fuel an amount equal to

the aggregate amount of tax imposed on such fuel under section 4091.

I.R.C. § 6427(*l*)(1) (1988).

Congress, in other words, created a specific remedy for recovery of taxes by the ultimate user when the ultimate use is tax exempt. But the refund is available only to the "ultimate purchaser" of the fuel. No comparable exception has been created for a middleman such as Amigo. Courts have consistently recognized that the "ultimate purchaser" is "the purchaser in the stream of commerce who is intended to use the product himself—as opposed to a middleman who intended to resell the product." *Valley Ice & Fuel Co. v. United States*, 30 F.3d 635, 638 (5th Cir.1994); *see also Bodine Oil, Inc. v. United States*, 929 F.Supp. 761, 763 (D.N.J.1996), *aff'd*, 107 F.3d 6 (3d Cir.1997); *Cook Oil*, 919 F.Supp. at 1563; *Garner v. United States*, 92–2 U.S.Tax Cas. (CCH) ¶ 70,023, 1992 WL 201011 (E.D.Pa.1992). Therefore, as explained in *M & M Fuel Co, Inc. v. United States*, 770 F.Supp. 1492, 91–1 U.S.Tax Cas. (CCH) ¶ 70,009, at 88,285 (D.Kan.1991), "plaintiff could have initially avoided paying the questioned tax, even without having properly registered, by simply passing the tax on to its buyers. Then, if the ultimate use of the fuel was nontaxable, the ultimate user would have been entitled to a refund pursuant to 26 U.S.C. § 6427(*l*)(1)." *Id.* at 88,288.

Amigo did not pass the cost on to the ultimate users and thus did not avail itself of the remedy Congress made available. It is not the role of the court to create an additional remedy. Accordingly, Amigo lacks standing and the action must be dismissed on that basis.

## B. *Entitlement to a Refund*

Even assuming that Amigo has standing to sue because it "paid" the tax indirectly, its argument for a refund fails on the merits.

For the reasons explained below, it was not registered as a producer under the applicable statutes in place during the relevant time period. The transaction between Amigo and Martinez, the supplier, was therefore not a tax-exempt transaction.

The statutory and regulatory history of the tax on diesel fuel is convoluted. Prior to the passage of the Revenue Act of 1987, Public Law 100–203, 101 Stat. 1330, the excise tax on diesel fuel was collected at the retail level under section 4041. *See* I.R.C. § 4041(a)(1) (1982). Up until January 6, 1983, when it was repealed, section 4091 dealt with lubricating oil and was addressed by Treasury Regulation § 48.4101, discussed below. *See* I.R.C. § 4091 (1976); Treas.Reg. § 48.4101–1(a)(b) (1983).

The Revenue Act of 1987 moved the point of collection of the excise tax on diesel fuel from the retail level to the producer level. In so doing, it utilized the previously repealed sections 4091–4093. *See* I.R.C. §§ 4091–4093 (1988). The new section 4091 applied an excise tax "on the sale of any taxable fuel by the producer or the importer thereof or by any producer of a taxable fuel." *See* I.R.C. § 4091(a) (1988). The term "taxable fuel" included diesel fuel. *See* I.R.C. § 4092(a)(1)(A) (1988). The Revenue Act of 1988, Public Law 100–647, effective December 31, 1988, expanded the definition of producer to include marine retailers, such as Amigo. Section 4092, insofar as relevant here,[4] defined a "producer" as: "(A) any person ... who elects to register under section 4101[and] (B) a retailer selling diesel fuel exclusively to purchasers as supplies for commercial and non-commercial vessels." I.R.C. § 4092(b)(1)(A) & (B)(iii) (1988).[5] The Revenue Act of 1987 also amended section 4101, the statute requiring registration of anyone subject to tax under section 4081, to include a reference to the newly re-utilized section 4091. *See* I.R.C. § 4101(a) (1988).[6]

---

**4.** Section 4092(b)(1)(B) set out three ways to qualify as a producer. Only one, "a retailer selling diesel fuel exclusively to purchasers as supplies for commercial and non-commercial vessels," is invoked by plaintiff here. *See* I.R.C. § 4092(b)(1)(B)(iii) (1988).

**5.** Apparently still not satisfied with the location of the diesel fuel tax, Congress moved it to section 4081, effective January 1, 1994. *See* I.R.C. § 4081 (1994).

**6.** The version in place in May 1990 read as follows: "Every person subject to tax under section 4081 or 4091 shall, before incurring any

The section on which Amigo relies exempted sales between two entities "registered" as producers. *See* I.R.C. § 4093(b) (1988).

The defendant does not question that Amigo sold to commercial and non-commercial vessels. Rather, it points out that, with respect to the sales at issue, it is undisputed that Amigo was not officially registered by the IRS under section 4101, a necessary step in meeting the definition of a producer under section 4092, and thus did not qualify for tax-exempt status under section 4093. Amigo counters that, although the IRS did not complete the processing of the Form 637 application with respect to these sales, Amigo met the substantive requirement to be a producer—namely it sold to commercial and non-commercial vessels. In other words, Amigo interprets the word "register," as it appeared in section 4101, to constitute a mere submission of a Form 637 to the IRS. Amigo thus alleges that the sales of diesel fuel during the applicable time period were tax exempt.

Even before the passage of the Revenue Act of 1987, the IRS had occasion to issue Treasury Regulation § 48.4101–1 in connection with section 4101 which, at the time, required persons subject to a gasoline tax at the producer level under section 4081 to register with the Secretary.[7] *See* I.R.C. §§ 4101, 4081 (1982). This Treasury Regulation, which predated the changes in the code pursuant to the Revenue Act of 1987, interpreted the word "register" as defined in I.R.C. § 4101 (1982). *See* Treas.Reg. § 48.4101–1(a) (1983).

When the Revenue Act of 1987 was passed section 4101 was broadened to include transactions embraced in the new 4091. *See* I.R.C. § 4101 (1988). Treasury Regulation § 48.4101–1 was not, however, updated in 1987 when section 4091 was resuscitated. Nevertheless, it did describe the process of

registration required under section 4101 for any producer or importer of gasoline subject to tax under 4081. The regulation provided in relevant part as follows:

> (a) *Requirement*-(1) In general. Except to the extent otherwise provided in paragraph (a)(2) of this section, every producer or importer of gasoline ... and every manufacturer of lubricating oil ... must, before incurring any liability for tax with respect to such articles under section 4081 or 4091, as the case may be, make application for registry in accordance with the provisions of paragraph (b) of this section. Upon approval of the application, the applicant will be furnished a Certificate of Registry bearing its registration number....
>
>     ....
>
> (b) *Application for registry.* The application for registry required under paragraph (a) of this section must be prepared on Form 637 in accordance with the instructions and applicable regulations.

Treas. Reg. § 48.4101–1(a) & (b) (1983).

To deal with the changes made by the Revenue Act of 1987 the IRS published Notice 88–30, 1988–1 C.B. 497 on March 28, 1988. Among other things, Notice 88–30 addressed the process of "registering" for producer status as required under section 4101. The notice provided that diesel fuel could be sold tax-free between two producers, but only if both the purchaser and seller were registered in accordance with section 4101. The purchaser also had to be able to furnish the seller with a certificate of registry including a registration number issued by the district director. *See* I.R.S. Notice 88–30, 1988–1 C.B. 497, 501.

Shortly after the publication of Notice 88–30 the IRS published Notice 88–132, 1988–2 C.B. 552 addressing the expansion of the

---

liability for tax under such section, register with the Secretary." I.R.C. § 4101(a) (1988). On December 1, 1990, the section was amended: "Every person required by the Secretary to register under this section with respect to the tax imposed by section 4081 or 4091 shall register with the Secretary at such time, in such form and manner, and subject to such terms and conditions, as the Secretary may by regulation prescribe." I.R.C. § 4101 (Supp. II 1990). This is the version that was in place when Amigo made

its second submission of Form 637 on April 24, 1991. Amigo argues that under either version, in the absence of accompanying regulations, a mere submission of a Form 637 was enough to "register" them with the Secretary.

7. Treasury Regulation § 48.4101–1 was initially adopted on June 9, 1983, by T.D. 7908, 1983–2 C.B. 188.

definition of producer to include marine retailers. The notice provided in relevant part:

(2)(a) Marine Retailers. A marine retailer who qualifies as a producer under section 4092(b)(1)(B)(iii) of the Code and section V(B) of this notice will be required to be registered with the Service by January 1, 1990.... (c) After December 31, 1989, marine retailers will be required to be registered in order to buy diesel fuel tax free and before incurring liability for tax. Application for registry must be made on Form 637.... In order to enable the District Director to process the application before January 1, 1990, the applicant should submit a completed application no later than August 1, 1989.

I.R.S. Notice 88–132, 1988–2 C.B. 552, 554. Amigo claims producer status under section 4092(b)(1)(B)(iii) for the period of June 29, 1991, through March 23, 1992. However it is undisputed that it did not receive certificate of registry from the district director until March 24, 1992.

Amigo argues that the IRS failed, as advertised in both notices, to follow up with new regulations specifically addressing the changes in the code in 1987. Amigo asserts further that the failure to issue new regulations in conjunction with the change in the code pursuant to the Revenue Act of 1987 indicates that the IRS itself did not necessarily intend a certificate of registry to be a prerequisite for tax-exempt transactions. The court rejects this assertion.

■ IRS Notice 88–30 and Notice 88–132 defined the registration process in a manner consistent with existing Treasury Regulation § 48.4101–1, which had previously elaborated on the registration process set out in section 4101. It is clear to the court that, although the point of assessment and collection of the diesel fuel excise tax changed in 1987, the IRS consistently interpreted the process of registration required under section 4101. Merely sending in a Form 637 did not de facto "register" an applicant as a producer. Instead, a subsequent approval of the Form 637 by the district director and an issuance of a certificate of registry were required. *See* I.R.S. Notice 88–30, 1988–1 C.B. 497, 501; I.R.S. Notice 88–132, 1988–2 C.B. 552,

554; Treas. Reg. § 48.4101–1 (1983). Therefore, Amigo was not registered until March 24, 1992, the date that the district director issued the certificate of registry.

Finally, Amigo argues that the IRS inconsistently applied its own regulations when it levied a tax on the sales between Martinez and Amigo, citing *International Business Machines Corp. v. United States,* 170 Ct.Cl. 357, 343 F.2d 914 (1965) (stating that the Commissioner's exercise of discretion under I.R.C. § 7805(b) (1954) in a situation in which two separate taxpayers asked for a private ruling on the same issue and were treated differently was inequitable treatment under the tax laws). In support of its argument Amigo points to a memorandum released by the Assistant Commissioner (Examination) on May 15, 1992, and a letter from the Assistant Commissioner (Examination) to Senator David Pryor dated July 17, 1992. Amigo contends that these documents indicate that the IRS was willing to relax the requirement of registration as a prerequisite to exemptions in cases analogous to its own.

Neither the *memo* nor the letter are applicable to the case at bar. Both documents seem to address a situation in which suppliers had sold diesel fuel without paying tax and without having received an exemption certificate from the buyer. The IRS had been seeking back taxes on some of these transactions. After realizing that the IRS was assessing these back taxes inconsistently, the Assistant Commissioner attempted to restore some equity by relaxing the penalties on first-time violations. The situation in the case at bar is distinguishable because the seller here did collect the tax. There is therefore no reason for the court not to enforce the law as it finds it.

CONCLUSION

Because Amigo did not pay taxes directly to the IRS, it lacks standing to sue for a refund. Even if Amigo had standing, its claim would fail on the merits because Amigo was not registered as a producer under the applicable statutes. The transaction between the supplier and Amigo was taxable. Accordingly, defendant's motion for summary

judgment is hereby granted. The Clerk is directed to dismiss the complaint. No costs.

**IT IS SO ORDERED.**