**Wali MUHAMMED, Pro Se, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–475 T.**

United States Court of Federal Claims.

May 24, 1999.

---

Wali Muhammed, Pro Se, Little Rock, Arkansas, for plaintiff.

Michael F. Cox, with whom were Assistant Attorney General Loretta C. Argrett, Mildred L. Seidman, and Thomas D. Sykes, Tax

Division, Court of Federal Claims Section, Department of Justice, Washington, D.C., for defendant.

## OPINION

WIESE, Judge.

Plaintiff, a *pro se* litigant, sues here to recover federal excise taxes paid on inventory purchases of gasoline and diesel fuel that was later resold to a tax-exempt municipal entity. A refund is also claimed for excise taxes paid on fuel inventories that were lost to ground seepage due to the rupture of underground storage tanks following a prolonged period of heavy rain. The Government has moved for dismissal on the grounds that plaintiff's original filing does not constitute an informal refund claim sufficient to confer jurisdiction on this court, that the action is untimely, and that plaintiff lacks standing. The parties have briefed the issues, and oral argument was heard on May 6, 1999. We now find for the defendant, and accordingly dismiss plaintiff's complaint.

## FACTS

By his own account, during the years 1988–1989, plaintiff owned and operated the Arkansas Business Interchange, Inc., a wholesale distributor of gasoline and diesel fuels. At that time, plaintiff purchased 24,000 gallons of gasoline whose cost included a "tax" that was collected as part of the price charged by the supplier, Atlas Refinery, and thereafter remitted to the government.[1] Heavy rains later caused plaintiff's underground containment tanks to leak, resulting in the loss of 6,000 gallons of stored fuel.

On June 5, 1990, plaintiff, acting on behalf of Arkansas Business Interchange, Inc., filed a Form 720 with the Internal Revenue Service ("IRS" or "the Service"), purportedly seeking a refund of $1,688.00, representing the amount of tax plaintiff alleges was "prepaid" on the gasoline lost. This form, titled "Quarterly Federal Excise Tax Return," had the sub-caption instruction "Use To Report

1. Under the current version of the Tax Code, gasoline and diesel fuels are both taxed under 26 U.S.C. § 4081(a) (1994 & Supp. III 1997). Prior to the enactment of Pub.L. 103–66, § 13242(a) (1993), however, the gasoline tax was imposed by section 4081 while the tax on diesel fuels was set forth in section 4091.

Excise Taxes for 1990." In Part I of the form ("Computation of Tax Items") plaintiff—using the per-gallon tax rates shown on the form—indicated a total tax liability of $1,638.00 (reflecting a $1,152.00 tax liability for 6,000 gallons of diesel fuel and a $486.00 tax liability for 6,000 gallons of gasoline). In turn, this figure, $1,638.00, was carried forward to Part II of the form ("Computation of Net Tax Liability") where the following entries were made: on line 1, "Total tax," plaintiff entered $1,638.00; on line 2, "Adjustments," no entry appeared; and on line 3, "Tax as adjusted," the amount indicated was "0000.00." Based on these numbers, plaintiff went on to show a "Total liability for quarter" (line 4(b)) of "0000.00" and "Total deposits for quarter" (line 4(c)) as $1,688.00, resulting in an "excess" payment (line 8) of $1,688.00. Plaintiff specified—by checking the appropriate box—that this excess amount was to be refunded to him. No further word of explanation accompanied the form.

The IRS, however, understanding the form to set forth plaintiff's excise tax *liability*, interpreted as an error plaintiff's failure to list any adjustments to the "Total tax" while nonetheless showing the "Tax as adjusted" as $0. Accordingly, the Service assessed a tax deficiency of $2,271.43, representing the $1,638 originally identified on the form as "Total tax" plus various penalties and interest. The record contains no information as to the result of this deficiency assessment.

A number of years later, on January 17, 1997, plaintiff filed another Form 720, this time seeking recovery of $48,600, representing the amount of excise tax plaintiff claims to have paid Atlas Refinery on the purchase, in 1988–1989, of 200,000 gallons of diesel fuel that was later resold to the city of Shreveport, Louisiana's Metropolitan Transit System—a tax-exempt entity. Attached to the form was a letter making reference to the earlier-filed claim and contending that the fact that he had filed the June 1990 claim while handicapped both by alcoholism and incarceration, required that the statute of limitations be equitably tolled to permit this added (but earlier-omitted) claim for refund.

Plaintiff brought suit in this court on July 15, 1997 seeking a refund of the $48,600 arising from the sale of diesel fuel to the city of Shreveport, Louisiana, and a refund of the $1,688 arising from the loss of gasoline due to flooding.

## DISCUSSION

Defendant's argument is threefold: it contends first that the Form 720 filed on June 11, 1990, was insufficient to constitute even an informal claim for refund; second, that the return filed on January 17, 1997, was untimely and therefore could not serve as a basis for the refund plaintiff seeks; and third, that in any event, plaintiff lacks standing to prosecute the claims.

Because we see the June 11, 1990 claim and the January 17, 1997 claim as conceptually distinct, we will, for the sake of clarity, deal with each in turn.

### The June 11, 1990 Claim

Defendant contends that plaintiff's June 11, 1990 submission—filed to recover $1,688 in excise tax paid to Atlas Refinery on diesel fuel and gasoline later lost to ground seepage—did not constitute an informal refund claim and therefore could not satisfy the administrative-filing requirement of 26 U.S.C. § 7422(a) (1994) that stands as a jurisdictional prerequisite for the commencement of a refund suit in this court. Defendant further argues that plaintiff, to the extent that the return was filed in the name of the Arkansas Business Interchange, Inc., has no standing to prosecute the present action. Finally, defendant maintains that the fact that plaintiff himself paid no taxes directly to the IRS—but rather paid invoices with an excise tax component to Atlas Refinery—precludes him from any recovery.

Plaintiff, for his part, argues that the 1990 filing indeed constitutes a valid refund claim in compliance with 26 U.S.C. § 7422, that any defects in the claim were later remedied by his 1997 submission, and that the Government's abandonment of its initial challenge to the timeliness of suit leaves open the period for amending the earlier-filed claim.[2] Addi-

---

2. At the initial status conference held in this     case, defendant had expressed the view that even

tionally, plaintiff maintains that he has standing to pursue the claim, and may do so despite the fact that he personally has paid no tax to the Government because he (i) was the registered corporate agent for Arkansas Business Interchange, Inc. at the time the initial Form 720 was filed, (ii) is now the successor-in-interest to Arkansas Business Interchange, Inc. (according to plaintiff the corporate charter was revoked), and (iii) may invoke agency principles to rely on payment of the tax by Atlas Refinery as the statutory equivalent of payment by Arkansas Business Interchange, Inc. The court finds none of plaintiff's arguments persuasive.

We begin, as· does defendant, with the sufficiency of plaintiff's claim. 26 U.S.C. § 7422 provides that:

> No suit or proceeding shall be maintained in any court for the recovery of any internal· revenue tax alleged to have been erroneously or illegally assessed or collected ... until a claim for refund or credit has been duly filed with the Secretary....

26 U.S.C. § 7422(a).

The implementing Treasury regulation, set forth at 26 C.F.R. § 301.6402–2(a) (1998)[3], requires that a claim for refund

> set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof.... A claim which does not comply with this paragraph will not be considered for any purpose as a claim for refund or credit.

■ Courts have long recognized an element of flexibility in the filing requirement, finding jurisdiction even in those cases where a plaintiff has failed to file a formal claim for refund, that is, a claim for refund submitted on the proper IRS form, but has instead filed an informal claim. However, in order to

constitute an informal claim for refund, a submission must be sufficiently detailed and specific to put the IRS on notice that a refund is being sought. The claim must describe the legal and factual basis for the refund, and must be at least partially committed to writing. *Arch Engineering Co., Inc. v. United States,* 783 F.2d 190 (Fed.Cir. 1986).

■ Judged in light of these standards, the June 11, 1990 filing was insufficient to constitute an informal claim for refund, even under the most generous understanding of that term. Plaintiff's filing of a Form 720—a form designed to report and pay excise tax—cannot alone be said to have alerted the Service to the existence and nature of plaintiff's claim. The Service understood—in our view reasonably—that the claimed "refund" amount was the product of mistaken calculations and thus, that no refund existed at all. Moreover, the fact that the Service had no record of excise taxes being paid either by plaintiff or by the Arkansas Business Interchange, Inc., that the Form 720 was designed to report excise tax liability rather than claim a refund, and that plaintiff provided no explanation of calculations which were not otherwise clear on their face, nor said anything about the agency status that is now being asserted, all confirm the inadequacy of the submitted form in providing the Service reasonable notice of plaintiff's claim.

Plaintiff advises that the form was filed in an attempt to recover the pre-paid tax on gasoline later lost as a result of natural forces; however, nowhere on the form is that basis for refund made clear. The fact that the Form 720 contained a line for "refund" does not, as plaintiff maintains, make his effort tantamount to a valid request for a refund. 26 U.S.C. § 7422 and its accompa-

if plaintiff's 1990 Form 720 filing could be taken as an informal claim for refund, nevertheless plaintiff's suit here would have to be dismissed for lack of timeliness because the suit was not brought within the statutory two-year period following the Government's issuance—after receipt of the Form 720—of a notice of tax owed. In its brief to this court, the Government indicated that it was abandoning this argument because the notice of tax owed was apparently not sent to plaintiff by certified or registered mail as required by Section 6532(a)(1) of the Tax Code.

Plaintiff's argument—which we address later in this opinion—is that the "defective" notice of tax owed is essentially equivalent to a deficient notice of refund disallowance, thus leaving open the time in which he might amend his 1990 refund claim.

3. While we quote here from the current version of the regulation, the form of the regulation in effect at the time in question was identical.

nying regulations require, at minimum, information sufficient to allow the Service to make an informed judgment about a taxpayer's claim. It is not the IRS's obligation to "weigh circumstantial evidence in order to determine whether a taxpayer is asking for a tax refund." *Barenfeld v. United States,* 194 Ct.Cl. 903, 912, 442 F.2d 371, 375 (1971). Courts may not intervene where a taxpayer has failed to give the Government this most fundamental notice of his claim.

Nor can the defects in the June 1990 claim be remedied by the 1997 filing, which plaintiff characterizes as an "amendment" to his original submission. While the 1997 letter elaborates briefly on plaintiff's earlier claim,[4] we are unaware of any authority which would allow a deficient claim—one that did not in fact amount to a claim at all—to be later supplemented outside the statute of limitations period. Plaintiff reads *Wall Industries, Inc. v. United States,* 10 Cl.Ct. 82 (1986) as allowing this court to treat the 1997 submission as a permissible adjunct to the 1990 filing, thereby curing any defects in the earlier submission and transforming it into a viable claim. We read *Wall Industries,* however, to stand for the unremarkable proposition that the date of filing of a formal claim for refund relates back—for timeliness purposes—to the date of the filing of the informal claim. Here, however, we have no informal claim.

The fact that the Government now concedes that the statute of limitations applicable to suits for refund has not yet run with respect to the 1990 claim, on the grounds that the Service had not responded with a proper notice of rejection—*i.e.,* a "notice of disallowance" transmitted by certified or registered mail—merely speaks to the issue of whether plaintiff, had he filed an adequate claim for refund, in the first instance, could nonetheless file suit in 1997 in light of 26 U.S.C. § 6532(a)(1) (1994)'s requirement that an action for refund be brought within two years of a claim's denial. But while there may have been no appropriate denial to trigger section 6532(a)(1)'s limitations period,

there was also no appropriate claim to be denied. Plaintiff did not in any legal sense *file* a claim, so the Service's failure to *deny* a claim is without legal effect.

26 U.S.C. § 6511(a) (1994) requires that a claim for refund be submitted within three years of the time the return was filed or within two years of the time the tax was paid. Plaintiff satisfied neither standard. Since plaintiff's original submission did not constitute a claim for refund, since his out-of-time letter in 1997 could do nothing to "revive" a yet-to-be-asserted claim, and since the period for asserting that claim has now elapsed, plaintiff is without recourse.

Having concluded that the June 11, 1990 submission did not properly constitute a claim for refund, we need not address the question of whether Mr. Muhammed, rather than the corporation, has standing to pursue that refund claim. We turn, then, to plaintiff's January 17, 1997 filing.

*The January 17, 1997 Claim*

With respect to the 1997 claim, defendant asserts that the claim for refund—filed more than two years after payment of the tax—was untimely under 26 U.S.C. § 6511, that a suit based on that refund claim—filed less than six months after the submission of the claim—was premature under 26 U.S.C. § 6532(a)(1), and that a plaintiff who did not himself pay tax directly to the IRS has no standing to sue for its recovery.

We begin with the standing argument, as it goes to the very heart of plaintiff's second claim. Central to defendant's position is the issue of whether an entity which did not itself pay excise taxes to the Government can nonetheless recover those taxes. The answer, in this situation, is no. Put simply, a middleman is not entitled to recover excise tax paid by its supplier, when, as plaintiff concedes, he paid no tax to the IRS directly and merely "prepaid" tax to the extent that the supplier's invoices contained a charge for an excise tax on fuel.

In reaching that conclusion, we turn first to 26 U.S.C. § 6427(*l*)(1) (1994),

4. We express no opinion as to whether plaintiff's 1997 reference to the earlier-filed claim would have been sufficient—if offered originally—to have constituted an informal refund claim for the purposes of 26 U.S.C. § 7422.

*amended by* 26 U.S.C. § 6427(*l*)(1) (Supp. III 1997)—the version of the statute in effect during the period in question. That section, which we find dispositive, provides in relevant part:

> if any fuel on which tax has been imposed by section 4091 [imposing diesel fuel excise tax] is used by any person in a nontaxable use, the Secretary shall pay (without interest) to the ultimate purchaser of such fuel an amount equal to the aggregate amount of tax imposed on such fuel under section 4091.

Section 6427 thus requires that the "ultimate purchaser" seek the refund, and ample case law confirms that the term "ultimate purchaser" refers not to middlemen such as plaintiff, but to the final consumer of the fuel. *See Valley Ice & Fuel Co. v. United States,* 30 F.3d 635 (5th Cir.1994); *Walsh Oil Co. v. United States,* 26 Cl.Ct. 426 (1992) (holding that a plaintiff had no standing to sue for a refund of fuel excise tax where plaintiff had not itself paid the tax to the Government); *Amigo Enterprises, Inc. v. United States,* 41 Fed.Cl. 462 (1998). It is the city of Shreveport, then, and not plaintiff, that might properly bring an action for refund. Nor do we see any basis for overcoming this requirement through the agency principles on which plaintiff relies. The wording of the statute is specific and, therefore, controlling. Accordingly, we find that plaintiff lacks standing to sue, and that his claim for refund of diesel tax must be dismissed on that basis alone.

█ Even if plaintiff were eligible to seek recovery of the taxes in question, however, he has failed to do so in a timely fashion. 26 U.S.C. § 6511 requires that a claim for refund for the overpayment of tax be filed within three years of the time the return was filed or two years from the time the tax was paid, whichever is later. Contrary to plaintiff's assertion, the Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105–206, 112 Stat. 685—an act which suspends the statute of limitations for the filing of a claim during periods of specified disability—cannot serve to salvage plaintiff's claim. That act, by its terms, tolls the statute of limitations only for those actions which are not barred, as of the date of the statute's enactment, by the "operation of any law or rule of law." In other words, the statute, forward-looking in its scope, does nothing to resurrect barred claims. As plaintiff's cause of action had expired prior to the passage of the act, the act has no application to the present case.

Nor may we toll the statute of limitations under these circumstances. The Supreme Court in *United States v. Brockamp,* 519 U.S. 347, 117 S.Ct. 849, 136 L.Ed.2d 818 (1997), concluded that

> Section 6511's [imposing a period of limitations on refund claims] detail, its technical language, the iteration of the limitations in both procedural and substantive forms, and the explicit listing of exceptions, taken together, indicate to us that Congress did not intend courts to read other unmentioned, open-ended, "equitable" exceptions into the statute that it wrote.... For these reasons, we conclude that Congress did not intend the "equitable tolling" doctrine to apply to § 6511's time limitations.

519 U.S. at 352, 354, 117 S.Ct. 849.

While *Brockamp* was essentially superseded by the Restructuring Act, it nonetheless represents the prevailing law in those cases to which the Restructuring Act does not apply. We have no authority to override the Supreme Court's clear declaration.

And while plaintiff maintains that the filing of his gasoline refund claim in 1990 tolls the statute of limitations on any subsequent diesel refund claim since the two transactions can both be characterized as "excise taxes," we cannot accept that view. Even had we construed plaintiff's initial filing as an informal claim for refund, the two submissions are insufficiently related to interpret the second as an extension of the first. Plaintiff's argument ignores the fact that the requests for refund had different factual predicates, that the Internal Revenue Code treats gasoline and diesel taxes differently, and that the first filing makes no mention of the second. Put simply, a claim cannot relate back to an earlier claim when they arise from separate taxes on separate and unrelated transactions.

In addition to plaintiff's standing deficiency then, plaintiff's later claim must also fail on grounds of timeliness.

CONCLUSION

In conclusion, we find the June 11, 1990 filing to be deficient on the grounds that it did not present a cognizable claim for refund. We further find the January 17, 1997 filing to be untimely—a fault not remediable by any equitable principle. More significantly, plaintiff, to the extent he was not the "ultimate purchaser" and paid no tax directly to the IRS, does not have standing to prosecute the claim.

Accordingly, the Clerk is instructed to dismiss the present action for lack of jurisdiction. No costs.